ARNO CO-OPERATIVE IRR. CO. et al. v. PUGH et al. (No. 404.)

(Court of Civil Appeals of Texas. El Paso. June 10, 1915. Rehearing Denied June 24, 1915.)

1. WATERS AND WATER COURSES ☞232—CONTRACTS—WATER RIGHT—CONTROL OF CANAL.
A contract by which two individuals agreed to make the necessary repairs on an irrigation canal to enable the irrigation company to carry out its water contracts in consideration of which they were to receive full-paid water rights for any lands owned by them under the system or which might thereafter be owned by them does not give to the individuals the right to the possession and control of the property of the company as against its officers.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 321, 322; Dec. Dig. ☞232.]

2. WATERS AND WATER COURSES ☞232—CONTRACTS — WATER RIGHT — CONTROL OF CANAL.
Even if the contract could be given that construction, the right of the individuals to the company's property would cease on their failure to perform their agreements.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 321, 322; Dec. Dig. ☞232.]

3. WATERS AND WATER COURSES ☞232—IRRIGATION COMPANIES — POWERS — ULTRA VIRES CONTRACT—CONTROL OF PROPERTY.
A contract by which the officers and directors of an irrigation company attempt to divest themselves of the possession and control of the company's property and to transfer it to individuals is ultra vires.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 321, 322; Dec. Dig. ☞232.]

4. INJUNCTION ☞70—CORPORATIONS—OFFICERS—USURPATION—INJUNCTION.
The duly elected officers of a corporation are entitled to an injunction to restrain others who claimed to be officers from interfering with the possession of the company's property, from using an imitation corporate seal, and from making corporate minutes.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 136, 137; Dec. Dig. ☞70.]

5. APPEAL AND ERROR ☞262 — QUESTIONS PRESENTED—ISSUES NOT SUBMITTED—EXCEPTION.
Where the facts were undisputed, and the plaintiff was entitled, as a matter of law, to the relief prayed for, his failure to except and assign error to the refusal of the court to submit other issues does not prevent a reversal of a decree which failed to award him the relief to which he was entitled.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1582–1589, 1593–1595; Dec. Dig. ☞262.]

6. JUDGMENT ☞251—APPLICABILITY TO ISSUES.
A decree adjudicating title to lands concerning which no issue was raised in the pleadings is erroneous.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 437; Dec. Dig. ☞251.]

7. JUDGMENT ☞21 — VALIDITY — UNCERTAINTY.
A decree awarding to individuals the control and possession of the property of an irrigating company until a contract between them and the company whereby they were to pay the corporate debts and to receive water rights in exchange therefor was fully carried out, and restraining the plaintiffs from voting stock in the corporation, of which they were found to be the owners, and which constituted a majority of the stock issued, until they should perform their contract to form a holding company, is indefinite and uncertain and incapable of performance, since there was no means of determining when the first contract was performed or what debts should be paid, and no provision for voting the stock by anybody.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 7, 8; Dec. Dig. ☞21.]

8. DEPOSITIONS ☞79—ADMISSION IN EVIDENCE—POSSESSION BY ATTORNEY.
A deposition cannot be excluded from evidence merely because it was in the possession, with the permission of the court, of the attorneys for one of the parties for one night.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. §§ 202–207; Dec. Dig. ☞79.]

9. CORPORATIONS ☞187—NATURE—ENTITY.
A corporation and its stockholders are separate and distinct entities, and the rights of the corporation are not affected by the dealings of the stockholders among themselves.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 702, 703; Dec. Dig. ☞187.]

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**10. APPEAL AND ERROR ☞724, 758—QUESTIONS CONSIDERED—ASSIGNMENT OF ERROR—ERROR APPARENT OF RECORD.**

Errors of law apparent on the face of the record require consideration regardless of the sufficiency of the assignments and brief.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2997–3001, 3022, 3093; Dec. Dig. ☞724, 758.]

Appeal from District Court, Reeves County; S. J. Isaacs, Judge.

Separate actions by the Arno Co-operative Irrigation Company and others against Spencer B. Pugh and others, and by Spencer B. Pugh and others against Robert G. Werner and another, which were by agreement of the parties consolidated and tried as one suit. From the decree determining the rights of the parties, the Arno Co-operative Irrigation Company and others appeal. Reversed and remanded.

Hefner & Cooke and Buck & Starley, all of Pecos, for appellants. Ross & Hubbard, of Pecos, and Leslie A. Needham and John B. Dandridge, both of Chicago, Ill., for appellees.

### Statement of Case.

HIGGINS, J. The Arno Co-operative Irrigation Company, Robert G. Werner, R. S. Johnson, and F. E. Knapp filed suit in the district court of Reeves county against Spencer B. Pugh, John B. Dandridge, Leslie A. Needham, and I. O. Carroll, No. 1190, and the said Needham, Dandridge, Pugh, and Carroll filed a certain suit against Robert G. Werner and one Earl H. Prince, No. 1345, which said suits were by agreement of the parties and order of the court consolidated and tried as one suit. After the order consolidating said causes, the parties repleaded. The Arno Co-operative Irrigation Company, Werner, Johnson, and Knapp filed their amended petition, complaining of Pugh, Dandridge, Needham, and Carroll, and alleged that Johnson, Werner, and Knapp were the duly elected, qualified, and acting directors and officers of the plaintiff Arno Co-operative Irrigation Company, a private corporation; that on or about April 21, 1911, Dandridge & Pugh were the owners of 7,804 shares of the capital stock of said company, being a majority of the stock of the company. On said date said company had become heavily involved and indebted in large sums of money which it and the said Dandridge & Pugh were unable to pay, and by reason thereof the said company had become insolvent, and its assets were about to be dissipated and consumed by its creditors, and on or about said date the said Dandridge & Pugh procured one Earl H. Prince to advance such sums of money as should be necessary to redeem the said properties of the said Arno Co-operative Irrigation Company from its creditors, and in consideration therefor transferred and assigned to said Prince the said 7,804 shares of the stock of said irrigation company under an agreement that a holding company for said 7,804 shares should be formed, and the said stock in the holding company issued to said Prince and Dandridge & Pugh in the proportion of two-fifths to Dandridge & Pugh and three-fifths to Prince, said Prince to have management and control of both said companies, to the end that he might work said properties out of debt, and at the same time the said Dandridge & Pugh transferred to the said Prince the certificate of stock in said Arno Company and all right, title, and interest therein, and turned over and delivered to the said Prince the stock book, record books, minute book, seal, and other properties of said company. The petition further alleges that, in pursuance of said agreement, Prince advanced large sums of money for the purpose of paying off the indebtedness of said irrigation company in order that it might continue its business and the exercise of its franchise; that on May 6, 1911, at a meeting of the stockholders of said irrigation company, Werner and Prince, together with J. W. Parker, were elected as directors of the company, at which meeting Dandridge and Pugh were present and participated and acquiesced in said proceedings; that said officers continued in office until on or about February 20, 1913, when at another meeting of the stockholders Johnson, Werner, and Knapp were elected as the officers of said corporation; that Prince proceeded to organize said holding company, but before said properties could be transferred thereto certain creditors of Dandridge & Pugh instituted bankruptcy proceedings against them, and enjoined the said Prince from transferring said properties to said holding company as contemplated by said agreement; that thereafter Prince, with the consent of Dandridge & Pugh and the permission of said bankruptcy court, transferred said properties to the plaintiff Robert G. Werner, who assumed the obligations of said Prince under said contract, subject to the injunction issued in said bankruptcy proceedings; that thereafter Dandridge & Pugh filed a suit in the superior court of Cook county, Ill., against the said Robert G. Werner, and caused an injunction to be issued restraining him from proceeding to transfer said properties to the holding company, and thereafter the said Dandridge & Pugh continuously prevented by suits, injunction, and otherwise the carrying out of said agreement to transfer said properties to the contemplated holding company; that thereafter, and on or about December 12, 1912, after the said Prince and said Werner had paid off the debts of said irrigation company and had repaired its irrigation system, spending large sums of money therein, Dandridge, Pugh, Carroll, and Needham, for the purpose of depriving and defrauding Werner of the benefits of said agreement and for the purpose of obtaining the benefits of

said advancements, forcibly entered upon and took possession of all the physical properties of the said Arno Co-operative Irrigation Company, which are described in said petition, pretending to act as officers of said company, and caused a fictitious seal of said company to be made, and caused fraudulent minute books and stock books of said company to be made and executed which they were using, and were pretending to act as officers of the said Arno Company, without right; that Johnson, Werner, and Knapp, the real officers of said company, by said acts of appellees, were deprived of the possession of said properties, and the Arno Company was deprived of its property and the use and control thereof; that the acts of the appellees resulted in preventing Werner from carrying out and performing the conditions of said agreement between Prince and Dandridge & Pugh, and prevented him from realizing upon the assets of said company the moneys advanced by him and three-fifths of the profits thereof as represented by stock in said contemplated holding company.

The prayer of said petition reads:

"That upon final hearing hereof the plaintiff Arno Co-operative Irrigation Company recover of and from the defendants the title and possession of all and singular the above-described properties, and that plaintiff Arno Co-operative Irrigation Company have its writ of possession for said property; that the said defendants and each of them be restrained from pretending to act for or on behalf of said company, and from using a seal or purported seal of said corporation, and from in any manner interfering with plaintiffs in the management and control of the said company, or entering upon and interfering with the use and possession of any of its said property, and from attempting to vote or exercise control over the said 7,804 shares of stock as aforesaid, and for such other relief, general and special, to which plaintiffs may be entitled and they will ever pray."

Dandridge, Pugh, Needham, and Carroll answered, denying that Johnson, Werner, and Knapp were the officers of the Arno Company; admitted use of the seal and minute book of the Arno Company, and claimed to be its duly constituted and acting officers; admitted and alleged that they were in possession of the irrigation company's system and operating same, and denied the appellants' right to recover possession of said system; alleged that they were in possession and operating said system under and pursuant to a contract theretofore, on January 3, 1910, entered into by and between said Arno Company and said Dandridge & Pugh, whereby Dandridge & Pugh, in consideration of the company's agreement to issue to them certain water rights under said system, agreed to maintain said system free from debt until the happenings of a certain event, viz., the event named therein, which should entitle the water right owners to the management of said system, in performance of which contract Dandridge & Pugh had expended, in improving, maintaining, and operating said company's system, in excess of $40,000.

The foregoing statement of the contents of appellees' answer is copied from their brief. Their pleadings are very voluminous, and we assume that it correctly states the substance of their answer. It concluded with this prayer:

"Wherefore, premises considered, defendants pray judgment of the court whether the said R. G. Werner can now be heard to claim or herein assert any right, title, or interest in or to all or any portion of the stock of the Arno Co-operative Irrigation Company now owned and held by Leslie A. Needham, trustee, acquired from said John B. Dandridge and Spencer B. Pugh, and that said certificate No. 30 may be surrendered and canceled, and that said Werner be enjoined and restrained from asserting any claim or title thereto, and for all general and special relief at law and in equity as defendants shall be severally entitled, and that the injunction heretofore granted in said cause No. 1345 be continued in force."

The contract of January 3, 1910, referred to in said answer reads:

"This contract entered into this 3d day of January, A. D., 1910, by and between the Arno Co-operative Irrigation Company, party of the first part, and Dandridge & Pugh, parties to the second part, witnesseth:

"That parties of the second part agree to do and cause to be done all the work necessary to keep the Arno canal system in a fair state of repair, such as to enable the company to carry out its water contracts with all persons to whom water contracts are deeded until such time as 85 per cent. of the water rights of the company are disposed of in accordance with its by-laws. And said parties of the second part agree to do all of said work and pay for the same and meet all other expenses necessary for the purpose of keeping said system in repair for delivery of water under its contracts until the time above stated, and to hold said company absolvent from any obligation whatsoever on account of necessary carrying expenses which they agree to maintain.

"In consideration therefor the company agrees that the parties of the second part shall have the right to receive from the company fully paid up water rights on any land under said system belonging or which may belong to them without charge, provided the parties of the second part shall be obligated to turn back to the treasury of the company for delivery to purchasers one share of stock of the company for each acre of water rights deeded upon their direction under this contract; and parties of the second part shall have the further right, as further consideration for their agreement herein, to receive and accept from the company any water rights on other lands which they may request, which water rights shall be deeded to them upon such terms which may hereinafter be provided by the board of directors. It is understood and agreed, however, that the company shall keep in reservation at all times sufficient water rights to meet any and all obligations which it shall have assumed at the market price of such water rights, it being the intention of the parties hereto that the said company be kept by second parties free from debt to the time the holders of water rights assume control under the terms of the by-laws, which each of the parties hereto has read, and of which they take notice."

The undertaking of Earl H. Prince to Dandridge & Pugh reads:

"Chicago, Ill., April 21, 1911.

"To Dandridge & Pugh, Chicago, Ill.: This is to state to you in writing that in considera-

tion of my having advanced you certain sums of money and having received from you for same an assignment of 7,500 shares in the Arno Co-operative Irrigation Company, also a deed conveying to me your interest in 9,000 acres of land in Reeves county, Texas, subject to the existing incumbrances thereon, I agree to organize a stock company, to be a holding company for the above properties and to furnish such moneys as are required to redeem the properties which I select out of your holdings and to retain for myself three-fifths of the stock, and to deliver to you two-fifths of the stock in all of the above properties, and to develop the above properties to the best of my ability. If after inspection I decide not to go further, I agree to reconvey the above properties upon my being reimbursed for money advanced and expended by me. But the assignment of the above shares being absolute, if the property meets my approval after inspection, I also agree that I will use my best efforts to provide capital for undeveloped lands, and agree to not enter into any other company by which I might make a profit out of either land or water in which every other shareholder in this company did not share equally in pro rata as his interests appear.

"[Signed] Earl H. Prince."

The stipulation under which Prince transferred to R. G. Werner the stock of the Arno Co-operative Irrigation Company reads:

"It is hereby stipulated and agreed by and between the parties hereto by their respective counsel that Earl H. Prince may dispose of and transfer all of his right, title, and interest in and to the property specified in the petition of the petitioning creditors and of the receiver filed herein to Robert G. Werner, of Chicago, Ill., and without prejudice, however, to the rights of any of the parties hereto; it being understood and agreed that said Werner shall acquire the liabilities as well as the rights of said Prince, and stand in no better position in said matter than said Prince would have stood had he not disposed of or transferred his interest therein without prejudice to any and all injunctional or other orders entered herein, and that said Prince, in making said disposition and transfer, shall be considered as in no way violating any injunction or order entered herein. Dated Chicago, Illinois, August 8, 1911. Sherman M. Booth, Counsel for Petitioning Creditors. Moses, Rosenthal & Memons, Counsel for Receiver. David K. Tone, Counsel for Alleged Bankrupts, Dandridge & Pugh. Carnahan, Elsdon & Slusser, Counsel for Earl H. Prince."

The injunction in bankruptcy referred to in the pleadings, special issues, and judgment reads:

"In the Matter of John B. Dandridge and Spencer B. Pugh, Individually, and as Copartners as Dandridge & Pugh, Alleged Bankrupts, No. 18880.

"This cause coming on to be heard upon the petition in bankruptcy filed herein, and the petition of Hattie O. Cooney for the appointment of a receiver, and certain restraining orders therein prayed for, and it appearing to the court that if notice of the application for said restraining orders is given to said alleged bankrupts or to said Earl H. Prince, or to said Robert G. Werner, or J. E. Randall, or either of them, or to the Arno Co-operative Irrigation Company, or their agents or attorneys, that they will take steps to cause the property of said alleged bankrupts in their possession, custody, and control to be removed, concealed, conveyed, transferred, or secreted so that the effect of said restraining orders will be unavailing and ineffectual:

"Now, therefore, it is ordered and decreed that said Earl H. Prince, his agents and attorneys, be, and they are hereby, restrained and enjoined from making any sale, transfer, conveyance, incumbrance, or other disposition of or parting with possession of any or all certificate or certificates of stock of the Arno Co-operative Irrigation Company owned by said alleged bankrupts or in which they have some interest, and received by the said Earl H. Prince from them or from any other person holding the same in trust or otherwise of or the said alleged bankrupts, and from in any manner concealing, removing, destroying, or otherwise parting with possession of any and all papers, contracts, or documents or other instruments relating to transactions between the said Earl H. Prince, his agents and attorneys, and the said alleged bankrupts, their agents on attorneys, or in which the said alleged bankrupts, have any interest whatsoever, including the record books, stock books, minute books, and other books of the Arno Co-operative Irrigation Company; that said Earl H. Prince, his agents and attorneys, be and they are hereby enjoined from making any sale, transfer, disposition of, or parting with possession of any property whatsoever belonging to said alleged bankrupts, or in which they have any interest whatsoever.

"It is further ordered that the said Earl H. Prince, Robert G. Werner, and J. E. Randall, and their agents and attorneys, and each of them, be and they are hereby enjoined from causing the property of the alleged bankrupts or of the Arno Co-operative Irrigation Company to be sold, transferred, conveyed, incumbered, or otherwise disposed of in any manner whatsoever, until the further order of the court in the premises."

At a meeting of the stockholders of the Arno Co-operative Irrigation Company held May 6, 1911, Earl H. Prince, R. G. Werner, and J. W. Parker were elected directors of the corporation, at which meeting Dandridge and Pugh were present, participating and acquiescing therein, as alleged in the petition, and on February 20, 1913, at another meeting, Werner, Johnson, and Knapp were elected directors of the company. Johnson was also elected president and treasurer thereof, Werner vice president and assistant secretary, and Knapp, secretary.

The petition of Dandridge & Pugh in the superior court of Cook county, Ill., against E. H. Prince and R. G. Werner, for injunction, and the injunction issued thereon, were offered in evidence; the prayer of said petition and the injunction order thereon being as follows:

"May it please your honors to grant unto your orators the people's writ of injunction to be directed to the said Earl H. Prince and Robert G. Werner, restraining them, their agents and attorneys, from in any manner or form assigning, transferring, disposing of, or incumbering the shares of capital stock of the Arno Co-operative Irrigation Company or the water rights thereof, or any part thereof, or interests therein, held by them, or either of them, or incurring any liabilities against said company, either as officers or individuals, until the further order of this court.

"John B. Dandridge,
"Spencer B. Pugh,
"Complainants."

"State of Illinois, Cook County—ss.:

"The People of the State of Illinois to Earl H. Prince and Robert G. Werner, and Your Attorneys, Solicitors, Agents, and Servants, and to Each and Every One of Them—Greeting:

"Whereas, it hath been represented to the

honorable, the ――――, one of the judges of the superior court of Cook county, in the state aforesaid, on the part of John B. Dandridge and Spencer B. Pugh, complainants, in their certain bill of complaint exhibited before said judge, and filed in said court against you, the said above-named defendants, Earl H. Prince and Robert G. Werner, among other things, that you are combining and confederating with others to injure the complainant touching the matters set forth in said bill, and that your actings and doings in the premises are contrary to equity, and good conscience, and the said judge having under his hand entered indorsed upon said bill an order that a writ of injunction issue out of said court, according to the prayer of said bill: We therefore, in consideration thereof, and of the particular matters in said bill set forth, do strictly command you, the said above-named defendants, Earl H. Prince and Robert G. Werner, and the persons before mentioned, and each and every one of you, that you do absolutely desist and refrain from in any manner or form assigning, transferring, disposing of, or incumbering the shares of capital stock of the Arno Co-operative Irrigation Company or the water rights thereof, or any part thereof, or interest therein, held by you or either of you, or incurring any liabilities against said company, either as officers or individuals, until this honorable court, in chancery sitting, shall make other order to the contrary. Hereof fail not, under penalty of what the law directs.

"To the sheriff of said county, to execute and return in due form of law."

The case was submitted upon special issues, which, together with answers of the jury thereto, read:

"No. 1. The contract entered into between Dandridge & Pugh and Prince provided that when Prince came to Reeves county he could select out of the holdings of Dandridge & Pugh such part of the properties described in said contract as he desired. The properties included the shares of capital stock in the Arno Co-operative Irrigation Company and Dandridge & Pugh's interest in 9,000 acres of land in Reeves county. Q. Did Prince elect to take, in addition to the shares of capital stock in the Arno Co-operative Irrigation Company, Dandridge & Pugh's interest in all of said land? Answer: No.

"No. 2. Did Prince elect to take any part of Dandridge & Pugh's interest in the 9,000 acres of land? If so, what part? Answer: Accepted part known as the Spanjer land.

"No. 3. Did Prince or Werner furnish such moneys as were required to redeem the properties that you find that Prince elected to receive? Answer: Yes.

"No. 4. Has Prince or Werner endeavored to form a holding company for the properties that Prince elected to accept, and to deliver to Dandridge & Pugh two-fifths of the stock in same? Answer: Yes.

"No. 5. Did Dandridge & Pugh by any act of theirs prevent Prince or Werner, or both of them, from organizing a holding company, and delivering to Dandridge & Pugh two-fifths of the stock therein? Answer: No.

"No. 6. Were Prince or Werner, or both of them, prevented from forming said holding company, and delivering to Dandridge & Pugh two-fifths of the stock therein, by an order of injunction issuing out of the federal court of Illinois? Answer: Yes.

"No. 7. Did Prince or Werner have a reasonable time in which to organize a holding company, convey properties selected thereto and deliver or cause to be delivered to Dandridge & Pugh two-fifths of the capital stock thereof prior to the issuance of any injunction against them or either of them? Answer: No."

The following judgment was entered:

"And it appearing to the court from the findings of the jury and from the uncontroverted facts adduced in evidence and from the pleadings confessed that the plaintiff the Arno Co-operative Irrigation Company should be adjudged to have title to the Arno Co-operative irrigation system, including the dam, canals, etc., and that plaintiffs should be denied possession of said irrigation system, including the dam, canals, etc., until such time as plaintiff Werner shall have cleared the property of indebtedness and organized the holding company as hereinafter provided, and delivered to Dandridge & Pugh their interest in the stock of same, it appearing to the court that the defendants are in possession thereof under a valid and binding contract with the Arno Co-operative Irrigation Company, dated January 3, 1910, and that the defendants should be enjoined from acting as officers of said Arno Co-operative Irrigation Company, and that the defendants should not be enjoined from interfering in the management of said irrigation system, to wit, the dam, canals, etc., and that the defendants should be restrained from voting the stock of said corporation, and that the injunction heretofore granted in cause No. 1345 restraining plaintiffs from transferring, assigning, or otherwise disposing of the stock of the Arno Co-operative Irrigation Company and from voting same should be perpetuated, but modified to the extent that the said injunction shall continue only until such time as the defendant Werner shall carry out the terms of the contract entered into between Dandridge & Pugh and Prince, by organizing a holding company, freeing the property from any indebtedness, and clearing the property of the Arno Co-operative Irrigation Company from any lien, mortgage, or other incumbrance, and clearing what is known as the Spanjer land from any debt, lien or incumbrance.

"It is therefore ordered, adjudged, and decreed by the court that the title to the irrigation system known as the 'Arno Co-operative Irrigation System' and the legal and equitable title to what is known as the Spanjer lands be and the same are hereby decreed in the Arno Co-operative Irrigation Company, and that the Arno Co-operative Irrigation Company be, and it is hereby, denied possession of said irrigation system, including the dams, canals, etc., until such time as the contract between said Arno Co-operative Irrigation Company and Dandridge & Pugh, dated January 3, 1910, shall have been executed and fully performed, and that said contract be and the same is hereby adjudged and decreed to be valid and binding upon the Arno Co-operative Irrigation Company. The said lands known as the Spanjer lands are described as follows, to wit: [Here follows description of Spanjer lands.]

"It is further ordered, adjudged, and decreed by the court that the defendants, and each of them, be restrained from acting as officers of the Arno Co-operative Irrigation Company, and from using the minute books or seal of said Arno Co-operative Irrigation Company, and restrained from voting or exercising any control over the shares of stock represented by the certificate formerly held by Dandridge & Pugh, and now held by the plaintiff Werner; and

"It is further ordered, adjudged, and decreed by the court that the plaintiffs Werner, Johnson, and Knapp be and they are hereby restrained from transferring, assigning, pledging, hypothecating, or otherwise disposing of any of the shares of the capital stock of said Arno Co-operative Irrigation Company that were transferred by Dandridge & Pugh to Prince or Werner under or in pursuance of their contract with Prince, or any of the shares of stock represented by the certificate of stock issued in lieu of the stock transferred by Dandridge & Pugh to the said Prince, being represented by

certificate No. 30, or from in any manner voting same, and from conveying any assets of or imposing any liability or indebtedness upon said company, except so far as it may be necessary to vote same in the organization of and conveying to the holding company, and in discharging the indebtedness of said Arno Co-operative Irrigation Company, said injunction or restraint to remain in full force and effect until such time as the plaintiff R. G. Werner shall have organized a holding company and shall have paid and had released all liens, mortgages, or other incumbrances upon the property of the said Arno Co-operative Irrigation Company of date subsequent to May 6, 1911, including a certain judgment in favor of D. S. Robbins, and shall have paid off and had released all liens, mortgages, or other evidences of indebtedness against what is known as the Spanjer land above described, and shall organize a holding company, the purpose of which shall be to take over all of the stock procured from Dandridge & Pugh directly or through Prince or otherwise of the Arno Co-operative Irrigation Company and the Spanjer land, and shall have deeded to said holding company all of said stock of the Arno Co-operative Irrigation Company free from any liens, mortgages, or other incumbrances, and shall have deeded to the said holding company the Spanjer land free from any lien, mortgage, or other evidence of indebtedness, and shall have issued to Dandridge & Pugh, or their assigns, certificates of stock representing 40 per cent. of the capital stock of said holding company."

Certificate No. 30 referred to in the judgment was issued in the name of R. G. Werner, and called for 7,804 shares of the capital stock of the Arno Co-operative Irrigation Company. This 7,804 shares represented the stock owned by Dandridge & Pugh in the Arno Co-operative Irrigation Company on April 21, 1911, and which was by them on said date transferred to Prince as by the appellants alleged, and as above set forth.

Appellants offered in evidence the stock book of the Arno Co-operative Irrigation Company, showing all the certificates of stock issued and transferred by said company, and particularly certificate No. 7, issued May 13, 1910, to Dandridge & Pugh, for 9,894 shares, marked "Surrendered and canceled"; certificate No. 18, issued out of certificate No. 7, April 21, 1911, to Earl H. Prince for 7,804 shares, marked "Canceled, transferred to certificate No. 30, this February 13, 1913, J. W. Parker, Secretary"; stub of certificate No. 30, showing the issuance of said 7,804 shares from certificate No. 18 to R. G. Werner; and the said certificate No. 30 was also introduced in evidence, showing said 7,804 shares standing in the name of R. G. Werner. The entire stock book was offered in evidence showing all stubs and canceled certificates, and showing that none of the appellees owned any stock in said company.

The appellees, on or about December 14, 1912, took forcible possession of the properties of the company from appellants.

This appeal is presented by Werner, Johnson, Knapp, and the Arno Co-operative Irrigation Company.

## Opinion.

[1] Under a number of assignments complaint is made of that portion of the decree which denies to the company and its officers the possession of its properties until such time as the contract between the company and Dandridge & Pugh, dated January 3, 1910, shall have been executed and fully performed. The court in its decree recites that appellees were in possession under said contract, and in their brief appellees assert that under this contract such possession was rightfully denied the appellants. It is a complete reply to the reason thus assigned to say that there is nothing whatever in the contract of January 3, 1910, by which the company surrendered its possessory right to its properties and vested same in appellees.

[2] And, even if it did, the admitted and undisputed facts show that Dandridge & Pugh had failed to comply with the obligations which they assumed in the contract. This, of itself, would have authorized the company to resume its possession. The inception of the rights of Prince and Werner as stockholders arose out of the failure of Dandridge & Pugh to do what they had agreed with the company to do.

[3] Furthermore, under the terms of this decree, Dandridge & Pugh could forever prevent the company from regaining its right of possession by the simple expedient of declining to execute and perform their obligations thereunder. This portion of the decree is erroneous. Its effect is to take from the company and its officers the possession of its properties, and, in effect, vest its management and the control of its affairs in appellees. If the officers and directors of the company had, in fact, attempted by contract to divest themselves of such management and control, it would have been ultra vires, as was pleaded by appellants in their supplemental petition. This decree, in effect, has undertaken to compel the company and its officers to do what they could not lawfully have done by their voluntary act. Tempel v. Dodge, 89 Tex. 69, 32 S. W. 514, 33 S. W. 222. But this question of ultra vires is of no importance, for there is nothing in the contract by which it could be held that the company had surrendered its right of possession to Dandridge & Pugh or had agreed to surrender to them the control and management of its corporate affairs.

[4] Under another assignment complaint is made of the failure of the court to enter judgment restraining appellees from interfering with the possession of appellants and from using a fictitious seal, minute books, etc., and from, pretending to act as the officers of the company. This assignment is well taken. The facts show that at a meeting of the stockholders of the company held May 6, 1911,' Prince, Werner, and Parker were elected directors, and at a subsequent

meeting held February 20, 1913, Werner, Johnson, and Knapp were elected directors. Johnson was also elected president and treasurer, Werner vice president and assistant secretary, and Knapp secretary. This being true, and, as above shown, Dandridge & Pugh having no right of possession, they should have been restrained from interfering with the possession of the company and its officers; they should also have been restrained from using an imitation of the true seal of the company, making pretended minutes, and from acting as its officers. The judgment does restrain them from acting as officers.

[5] This counter proposition is urged by appellees in reply to this assignment:

"The refusal to render a judgment for a particular party on the verdict of a jury on special issues is not error unless it appears from the verdict that all issues of fact made by the pleadings and the evidence were determined by the jury, where such party is not entitled to a judgment, as a matter of law, solely on the special issues found, and reserves no exception and assigns no error to the refusal of the court to submit further issues."

It is true there is no finding of the jury upon the question here raised, but the facts were undisputed, and the court was not authorized to make findings contrary thereto. There was no issue raised by the evidence to submit to the jury in respect to this matter. As a matter of law, appellants were entitled to the relief here indicated.

[6] The eighth assignment complains of that portion of the decree which undertakes to adjudicate the title of the Spanjer lands, upon the ground that no issue in respect thereto is raised by the pleadings, and therefore such adjudication is without pleading to support it. This assignment is well taken.

[7] Under another assignment it is objected that the decree is indefinite, uncertain, contradictory, and incapable of performance. This is true, and it would require additional lawsuits to settle controversies which would inevitably arise out of this judgment if it were permitted to stand. Who would determine when the contract of January 3, 1910, had been executed and performed? Who would determine what debts the plaintiffs could properly be required to pay under its provisions? The injunction restrains Werner from voting the stock which he holds in the company, except as may be necessary in the organization of the holding company and making conveyance thereto. Dandridge & Pugh were not the owners of it, and its decree does not undertake to revest in Dandridge & Pugh the title to this stock. Who will vote that stock at stockholder's meetings, and why should Werner not do so, unless and until he is decreed not to be the owner thereof? He has the right to vote it, unless it should be recovered from him by Dandridge & Pugh, or is disposed of by him.

[8] Upon trial appellants offered in evidence the deposition of certain witnesses taken before a notary public in Cook county, Ill., and same was excluded upon objection of appellees. The bill of exception taken to its exclusion recites that counsel for appellee objected for the reason that the deposition was gone into on a previous trial, and excluded because of defects which appear on its face, and it was admitted that said deposition was filed in court on the 8th day of December, 1913; that on the evening of the 8th day of December, 1913, it was in the possession of William C. Rigby, of Chicago, of counsel for appellants in another suit on trial, alone in the hotel; that appellees and their counsel went to the hotel and made repeated requests to get said deposition about 11 o'clock at night on the 8th day of December, 1913, at which time Mr. Rigby promised to let counsel for appellees have same by 12 o'clock; that counsel for appellees went to the hotel at 12 o'clock, and Mr. Rigby said he could not possibly get through with it before 2 o'clock, and would not promise to deliver the deposition to appellees' counsel without permission of Judge Starley, from whom he got same. And counsel for appellees further objected to said deposition because it was alleged that same showed on its face evidence of having been tampered with, and of insertions having been made; and thereupon it was further admitted that, after said deposition was used in said trial on the 8th day of December, 1913, being another suit between the same parties, wherein said deposition was used by stipulation, same had been continuously in the possession and control of the clerk of the district court of Reeves county, Tex., and had not been out of such possession, and counsel for both parties had been permitted only to inspect same while in the possession of such clerk, and, further, that no motion to quash said depositions, or to retake same, or to suppress same, or any other objection thereto, was made by appellees prior to announcing ready for trial in the above-styled and numbered cause.

The original deposition is before the court, and the objection that it bears upon its face evidence of having been tampered with and insertions made therein is frivolous. The further objection that it should have been excluded because it was in possession of an attorney for one night requires no comment to demonstrate its lack of merit. The exclusion of the deposition was error.

[9] In conclusion, it may be remarked that the entire decree entered in this case evidences a confusion of the issues between the company and its officers on the one part and Dandridge & Pugh on the other and of issues and controversies arising between Werner and Dandridge & Pugh, as individuals, respecting stock ownership. Upon retrial the court below should bear in mind that the rights of the company and its officers are in no wise concerned with the controversies arising between Werner and Dandridge & Pugh, as individuals. The stockholders and

the company are separate and distinct entities. The stock transactions between the individuals do not alter the rights of the company.

In view of another trial, we deem it advisable to say that in order for a decree, in the case as consolidated, to properly adjudicate the rights of the parties, it must keep matters complained of by the corporation, to wit, its right to possession and control of its irrigation system, separate and distinct from those of the other parties to the suit, to wit, the right to vote the shares of stock, et cetera.

What has been said above renders it unnecessary to discuss those assignments to which specific reference has not been made. The questions presented thereby are controlled by the views expressed.

[10] Objection is made by appellees to the sufficiency of a number of assignments and manner in which they are briefed. The errors here pointed out are errors in law apparent upon the face of the record, and require consideration, regardless of the sufficiency of the assignments and brief.

Reversed and remanded for further proceedings in accordance with this opinion.