York & Cumberland Railroad Company *v.* Ritchie.

† YORK & CUMBERLAND RAILROAD COMPANY *versus* RITCHIE.

To maintain an action under a special statute authority, its terms must have been strictly complied with.

Thus, where on failure of the shareholders in an incorporated company to pay the legal assessments upon them, the statute authorized a sale of the shares at auction, under an order from the *directors to the treasurer* upon his giving the notices required, and a right to recover of the corporators the balance of the assessment which may remain unpaid, a sale made by the treasurer, under the authority of a *committee* appointed by the directors, is illegal and void.

The directors cannot in such cases delegate their powers.

Nor can such a sale be upheld under an order from the directors in the *alternative*. It must be absolute.

ON REPORT from *Nisi Prius*, HOWARD, J., presiding.

ASSUMPSIT, to recover of defendant as an alleged subscriber for three shares of plaintiffs' stock, the balance due on such shares, after their sale at auction for non-payment of assessments thereon, with costs of sale.

A subscription book was offered in evidence, upon which was found the defendant's name, with the figure 3 set against it.

Upon the question whether the defendant signed this paper, there was much conflicting testimony.

The records of the directors as to the assessments made, being to the amount of $50, on each share, were presented, no part of which were paid by defendant.

The charter of the company provided, that in case of the failure of the subscribers to pay the assessments made upon their shares, after such notice is given, as shall be prescrib-

ed by the by-laws of the corporation, the directors may order the treasurer to sell such share or shares at public auction to the highest bidder, and the same shall be transferred to the purchaser, and such delinquent subscriber shall be held accountable to the corporation for the balance if sold for less than the assessments due thereon.

The by-law established under this section was as follows:

The president and directors may, from time to time, make such equal assessments on all the shares in said corporation, as they may deem expedient and necessary for the purposes of the company; and may direct the same to be paid to the treasurer, at such time and place as they shall deem proper, governing themselves as to the amount of assessments, the allowance of interest, and in all other respects, by the terms, conditions, and regulations prescribed by the persons having charge of the original subscription books for stock, before the opening of said books; and the treasurer shall give notice of the amount per share of every such assessment, and of the time and place, when and where the same will be due and payable, by advertisements, to be printed in one or more newspapers to be printed in Portland and Saco, at least thirty days before the day fixed for payment thereof. And if any stockholder shall neglect or refuse to pay any assessment or assessments on his share or shares in said company, for the space of thirty days after the first publication of such notice, the directors may order the treasurer, after giving notice (as hereinafter provided,) of the sale, to sell any or all such shares, by public auction, to be held in said Portland, to the highest bidder; and the same shall accordingly be transferred by the treasurer to the purchaser, who shall be entitled to receive a certificate thereof. And notice of every such sale shall be given by the treasurer, in one or more newspapers, printed in Portland, at least thirty days before the day of such sale, designating the time and place thereof, and the shares to be sold.

At a directors' meeting, in Sept. 1850, it was "voted that the president together with the treasurer, be a committee

to adopt such measures as shall promise to be most effective for collecting the arrearages of subscriptions due and enforce such collection by sales of stock or preliminary employment of an attorney, to collect said dues, or in both ways as said committee shall think proper: and that the report of the treasurer of the list of delinquent subscribers be referred to said committee."

It was in evidence that notice of the assessments was given by the treasurer, as required in the above by-law, and that in pursuance of and claiming authority from the above vote of Sept., 1850, and with the assent of the president, the treasurer advertised and sold at auction, in form as prescribed by the by-laws, the three shares subscribed for by defendant, and transferred them to the purchaser, at the sum of $20 per share, and the costs of sale were $1,25; and that the avails were accounted for to the company.

The case was withdrawn from the jury and submitted to the full Court to settle the facts and the law.

*F. O. J. Smith,* for defendant, after arguing from the evidence what the facts were in the case, raised several objections to the maintenance of the suit, among which was this. The sale is illegal because not ordered by the directors.

It is unnecessary to cite authorities to the principle, that powers derived from, and proceedings based upon *statute provisions* exclusively, must be exactly in conformity to those provisions, or they are wholly invalid.

The fifth section of plaintiffs' charter provides, that in case a subscriber or stockholder shall neglect to pay any assessment on his shares for thirty days after notice has been given of such assessment, *the directors* may order the treasurer to sell such shares at public auction, &c.

Now the sale by the treasurer must be made upon the order of the directors. An order of sale by any other organ or committee, *acting under discretionary powers,* would not conform to the requirements of the statute. The case of *P. S. & P. R. R. Co.* v. *Graham,* 11 Met., is in point

York & Cumberland Railroad Company *v.* Ritchie.

upon this objection. The power of the directors to order a sale by the treasurer, is not a power that can be delegated. The statute contemplates the individual management and decision of the directors, not that of a substitute, to order a sale. As well might all the powers of directors be delegated as any one, and the whole theory of administration contemplated by a charter, changed. The directors have not power to order the president to sell the stock of delinquent subscribers, as the charter gives no such authority. No more have they power to order the president *and* treasurer *jointly*, to sell it. Such is not the contemplation, or authority of the charter. And where two are thus ordered to do an act, neither is competent to perform it alone. Its performance by one, is invalid. As where by a resolution of a board of bank directors, the president and cashier were empowered to borrow money for the bank, the president alone is not competent to act. *Ridgeway* v. *Farmers' Bank*, 12 Serg. & Rawle, 256. In this case, if power could be delegated to the president and treasurer *jointly*, to sell a delinquent subscriber's stock, the sale ordered and advertisement of sale should have followed the authority. It not having done so, the sale made is void.

*Shepley and Dana*, for plaintiffs.

Tenney, J. — The defendant denies having become a party to the contract, on which this action is attempted to be maintained. Upon the question of fact, whether he executed the contract or not, the testimony is conflicting, and not easily reconcilable. It is further insisted by the defendant, that if he did execute the agreement, that the company have failed to take the steps necessary to furnish a basis for this suit.

We have no occasion to decide this question of fact. Upon the assumption, that the defendant did become a party to the contract, as alleged in the writ, the company cannot prevail, upon the proof adduced.

The suit is to recover the difference between the aggre-

gate amount of assessments on three shares, which it is alleged the defendant agreed to take and fill, and the sum for which those shares were sold. The right to maintain such a suit upon a valid agreement to take the shares, and pay the assessments thereon, and a legal sale of the shares, after a neglect of the owner, to pay assessments properly made and advertised, is given by the statute, incorporating the company. In order to charge the defendant, however, upon this statute liability, there must be a strict compliance with the terms of the statute. And the proof introduced by the company fails to show such compliance.

The charter of the company, special laws of 1846, c. 369, § 5, after providing for the mode in which assessments upon shares may be made, and for directions to be given for payment thereof to the treasurer, requires, that he shall give notice of all such assessments; and in case any subscriber or stockholder shall neglect to pay any assessment on his share or shares, for the space of thirty days, after such notice is given, as shall be prescribed by the by-laws of said corporation, the directors may order the treasurer to sell such share or shares at public auction, after giving such notice as may be prescribed as aforesaid, to the highest bidder, and the same shall be transferred to the purchaser, and such delinquent subscriber shall be held accountable to the corporation for the balance, if his share or shares shall sell for less than the assessments due thereon, &c.

At a meeting of the directors of the company on Sept. 11, 1850, it was " voted, that the president, together with the treasurer, be a committee to adopt such measures as shall promise to be most effective for collecting the arrearages of subscriptions due, and enforce such collection by sales of stock or preliminary employment of an attorney to collect said dues, or in both ways as said committee shall think proper; and that the report of the treasurer of the list of delinquent subscribers be referred to said committee."

The treasurer testified, that in pursuance of, and claim-

ing authority from said vote of Sept. 11, 1850, and with the consent of the president, he advertised and sold at auction, in the form as prescribed by the by-laws, the three shares subscribed for by Charles S. Ritchie, on Dec. 3, 1850, and transferred them, then and there to the purchaser, J. P. Rich, who was the highest bidder for the same.

No provision is made in the charter of the company for a sale of shares, to obtain unpaid assessments thereon, excepting under an order of the directors for that purpose. The directors cannot legally delegate the power to a committee, to order such a sale. And when the order is given by a vote of the directors, it should be absolute and not in the alternative, such as is shown by the vote given to the committee.

The case furnishes no proof, that an order of the directors was given; but on the contrary, it appears by the testimony of the treasurer, that his only authority for selling the defendant's shares, was the vote of the directors of Sept. 11, 1850, referred to in the case. *Plaintiffs nonsuit.*