It appears from the application and the record accompanying it that the Pacific Railway Improvement Company was incorporated in the State of Connecticut in the year 1879, and organized for the purpose of constructing the Texas Pacific Railway. In the charter of the said corporation is this provision: "The officers of this corporation shall consist of a President, Vice-President, Secretary and Treasurer, and its affairs will be managed by a board of five directors."
A by-law provided that: "An executive committee shall, immediately after the adoption of the by-laws, be appointed by the President, and afterwards after the annual election in each year, consisting of two members and the President. Said committee shall continue in office until after the next annual election; and to said committee shall be and is hereby confided all the powers of the board of directors. And further providing that the president should have power to appoint such counsel, etc., as should be necessary for carrying on the business of the company, subject to the approval of the board of directors or executive committee." These are all of the provisions of the charter and by-laws that the record discloses." The foregoing is taken from the opinion of the Court of Civil Appeals.
The Pacific Railway Improvement Company purchased about 17,000 acres of land in El Paso county, paying the money therefor through its then President, G.M. Dodge, the defendant in error herein, who took the deed in his own name, with the distinct understanding that it was to be the property of the said company. Some time afterwards Dodge purchased the land from the company by a verbal agreement, and claimed the same and paid taxes thereon as his own.
After this verbal purchase by Dodge, C.L. Frost, the President of the said Pacific Railway Improvement Company, and John Adamson, one of the directors of the said company, on the 23d day of February, 1890, entered into a contract with the plaintiff in error, by which he was engaged *Page 70 
on behalf of the said company to institute legal proceedings in the name of the said company against G.M. Dodge for the recovery of the land before mentioned, and was to have for his services one-half of the land recovered; said appointment was in writing and contained this clause: "And if, for any cause, the Pacific Improvement Company fails to execute such deeds to such lands as he may recover for said company, or in case any suit or suits instituted under this authority be compromised without the concurrence of the said E.W. Tempel, then this obligation is to operate as a deed of conveyance of one undivided half of all lands as he may recover for said company." This instrument was signed,
C.L. Frost, President,
John Adamson, Secretary.
Approved by the Executive Committee.
C.L. Frost, John Adamson.
No executive committee had been appointed since 1887, and none existed when this instrument was first made. The business for the transaction of which the Pacific Improvement Company was created had been completed and this committee was appointed for the sole purpose of approving this contract. After it was made and signed by Frost, as. President, and Adamson, as Secretary, Frost appointed John Adamson and Max Elser, directors of the said company, as said committee, and after such appointment, the indorsement, "approved by the executive committee," was placed upon the said contract and signed by Frost and Adamson.
This contract was never approved by the board of directors, nor by the stockholders; but afterwards the board of directors by regular proceedings acknowledged Dodge's right to the property and made him a quit claim deed therefor. Tempel had taken some steps toward recovering the property from Dodge before the quit claim deed was made from the corporation to Dodge; he then sued Dodge and the company for one-half of the land mentioned in the agreement and which was conveyed to Dodge by the quit claim deed.
The only title that Tempel had was derived through the instrument of writing made by Frost and Adamson, and if that conferred upon him no title then he had no right of recovery and this application must be denied.
Upon this statement the question arises: can the board of directors of a corporation, under a charter which imposes upon it the entire management of its affairs, confer that authority upon an executive committee to be appointed by the President of the company? Undoubtedly the board of directors can appoint agents, whether in the form of committees or as single agents, to transact the ordinary business of the corporation; but we believe that the rule is well settled by authority and sustained by sound principle that a board of directors can not confer upon others the power to discharge duties imposed upon them which involve the exercise of judgment and discretion, except in the transaction of the ordinary *Page 71 
business of the corporation, unless authorized so to do by the charter. (Thompson on Corporations, sec. 3944, et seq.; Green's Brice's Ultra Vires, 490-1-2; Railway v. Ritchie, 40 Me. 425; Tippets v. Walker, 4 Mass. 595; Weidenfeld v. Railway, 48 Fed. Rep., 615.)
The by-laws in express terms substituted the executive committee, to be appointed by the president, for the board of directors, and attempted to confer upon that committee all of the powers given by the charter to the board of directors. Such a provision in the by-laws is so palpably in conflict with the charter under which the corporation was organized that there could scarcely be a question that the by-law would be absolutely null. This being true, the executive committee appointed by Frost, and one of which, with himself, acted in this instance, was, under the facts shown in this case, without any authority to convey the title of the Texas Improvement Company to the lands in question, and its attempted conveyance to Tempel was without any effect and conferred upon him no right or title to the land; and Dodge having acquired the title to the land by a quit claim deed, the judgment of the court in his favor was correctly rendered.
For the reasons above given, that Tempel had no title to the land and, therefore, could not recover in this suit, the application for writ of error is refused.
We do not find it necessary to pass upon the other question raised in the case, which is, whether or not the verbal agreement between Dodge and the improvement company was sufficient to convey to Dodge the right of the company's equity in the land.
Writ of error refused.
Delivered November 7, 1895.
Ball Temple, Jay Good and R.E. Beckham, for rehearing.