ROBERT L. HELMS ET UX. V. HOME OWNERS' LOAN CORPORATION.

No. 7223.   Decided March 10, 1937.
(103 S. W., 2d Series, 128.)

*Geo. T. Burgess,* of Dallas, for appellants.

It was error for the Court of Civil Appeals to sustain a demurrer to plaintiffs' petition which stated a cause of action, and the sale by a substitute trustee was void because the alleged corporation could only act through its board of directors, which was the Federal Home Loan Bank Board, and the power of the corporation must be exercised by such board duly assembled and can not be by it delegated to its Regional Manager, and the power to accelerate and declare due such note, or to determine who should be or make a choice of a substitute trustee, or the power to appoint a substitute trustee is one that is vested by appellants in the board of directors of appellee corporation and could not by it be delegated to its Regional Manager. Michael v. Crawford, 108 Texas 352, 193 S. W. 1070; Holcomb v. Nettleton, 35 S. W. (2d) 745; Fuller v. O'Neil, 69 Texas 349, 6 S. W. 181.

*A. M. Frazier,* of Dallas, for appellee.

The Regional Manager of the Home Owners' Loan Corporation, as a duty incident to his position, had full right and authority to accelerate the obligation of appellants, and to receive the resignation of James Shaw, the original trustee, and to appoint a substitute trustee to sell the security property pursuant to the terms of the deed of trust, for the purpose of collecting the corporation's demand, and his act in so doing was that of the corporation and not of a mere agent. North Side R. R. Co. v. Worthington, 88 Texas 562, 30 S. W. 1055; Taylor Cotton Oil Co. v. Early-Foster Co., 204 S. W. 1179; 2 Fletcher Cyc. of Corp., 1887.

*Brooks, Napier, Brown & Matthews, Fagan Dickson, Birk-*

*head, Beckman, Stanard & Vance,* all of San Antonio, *Andrews, Kelley, Kurth & Campbell,* of Houston, *Turney, Burges, Culwell & Pollard,* of El Paso, *Aldredge, Shultz & Madden, Hamilton, Lipscomb & Wood* and *John F. Murphy,* all of Dallas, and *Scarborough & Fly,* of Abilene, filed briefs as amici curiae.

MR. JUSTICE SHARP delivered the opinion of the Court.

Because of the conflict between the opinion of the Court of Civil Appeals at Dallas in this case and the opinion of the Court of Civil Appeals at San Antonio in the case of Taylor v. San Antonio Joint Stock Land Bank, 101 S. W. (2d) 868, this case is here on certified questions from the Court of Civil Appeals at Dallas. The entire record, including the briefs of the parties and the tentative opinion of the Court of Civil Appeals, accompanies the certificate. The certificate reads as follows:

"The appeal of the cause is prosecuted by appellants from a final judgment of dismissal by the trial court, after such court had sustained appellee's general demurrer and appellants had declined to amend. The petition filed by appellants shows that they are husband and wife, and that they reside in the City of Hillsboro, Hill County, Texas, where in 1934 they owned a home on land described in the petition, burdened with a valid lien to secure an indebtedness in the sum of $1512.40. On November 19, 1934, appellants availed themselves of the provisions of the Home Owners Loan Act, executed in favor of appellee their certain promissory note in the principal sum of said indebtedness, payable in monthly installments, the first installment being payable December 19, 1934, and a like installment being payable on the 19th day of each succeeding month thereafter, until said note was finally paid. The payment of the note was secured on the same day by the execution of a deed of trust to James Shaw, as trustee for the benefit of appellee; thereby evidencing a valid lien upon their home in the amount of said indebtedness.

"The note under inquiry provides that, '* * * in the event of default in the payment of any installment thereof for a period of ninety days, the defendant (appellee) or other holder of said note, at its option, may declare the balance owing on said note at once due and payable * * *.' The deed of trust provides that, in the event such default shall be made in the payment of any installment of said note, or the appellee shall fail to keep or perform any of the conditions, stipulations or covenants of said deed of trust, then the whole of said note shall, at the option of appellee, or other holder thereof, become

at once due and payable, without notice, and the trustee named in said deed of trust, or his successors in trust, shall be and are authorized and empowered, when requested so to do by the holder of said note, at any time after such default, to sell the above described real property at public auction, to the highest bidder for cash, * * *." (Then follows the time and place of such sale, and the provision that a deed be executed to the purchaser conveying the land in fee simple.)

"The said deed of trust further provides that, in case of the death of James Shaw, the trustee named therein, or of his refusal, failure or inability, for any reason, to make such sale or perform said trust, the appellee, or other holder of said note, shall have the right and is hereby authorized and empowered to appoint in writing a suitable person who resides in the State of Texas, who shall become the trustee thereunder, as the substitute for the trustee named therein, and said substitute trustee shall thereupon succeed to all of the assets, rights, powers and trusts thereby granted to or vested in the said James Shaw, as trustee.

"The petition shows that the parties further contracted in respect to a substitute trustee, 'It is further expressly provided that the corporation (meaning the defendant), in any event, is hereby authorized at its option to appoint in writing a substitute trustee to act instead of the trustee named herein; and the authority to appoint other substitute trustees, successively, during the life of this loan, and such trustees shall each and all succeed to all of the rights and powers of the first trustee named herein.' The petition further shows:

" 'That said defendant was created under an Act of Congress of June 1933, known as the Home Owners Loan Act of 1933, which Act with reference to the creation of the defendant provides: that the board known as the Federal Home Loan Bank Board, created under and by an Act of Congress known as the Federal Home Loan Bank Act, is authorized and directed to create a corporation to be known as the Home Owners Loan Corporation, which shall be an instrumentality of the United States, which shall have authority to sue and be sued in any court of competent jurisdiction, federal or state, and which shall be under the direction of the Board and operated by it under such by-laws, rules and regulations as it may prescribe for the accomplishment of the purposes and intent of this section. The members of the Federal Home Loan Bank Board shall constitute the board of directors of the Home Owners' Loan Corporation; pursuant to which act and provisions thereof, the defendant was incorporated and is now operating and

is being operated, run, managed and controlled by the Federal Home Loan Bank Board acting as its board of directors, and said Federal Home Loan Bank Board has always, since the creation of said defendant corporation, acted as the Board of Directors thereof.'

"The petition further shows that appellee, acting through its Board of Directors, passed the following resolution:

" 'Be It Resolved: That the following officers of Home Owners Loan Corporation, to-wit: The Chairman of the Board or Vice-Chairman, the General Manager or any Deputy General Manager, the Secretary or any Assistant Secretary, the Treasurer or any Assistant Treasurer, any Regional or Assistant Regional Manager, any Regional or Assistant Regional Treasurer, be, and each is, hereby authorized to execute, seal with the corporate seal, attest, acknowledge on behalf of the Corporation, and deliver or accept any instrument, and perform any and all acts necessary or appropriate, in connection with: (a) the exercise of any power of attorney now or hereafter running to Home Owners Loan Corporation and the appointment of substitute trustees under deeds of trust or other instruments securing debt now or hereafter held by the Corporation, or (b) the foreclosure of any mortgage or security now or hereafter held by said Corporation, including foreclosure deeds in pursuance of sales under power of attorney, or (c) the purchase, sale for cash or on terms or rental of any property to or by said Corporation, including deeds conveying title to real estate, or any interest therein now or hereafter held by the Corporation and contracts or other obligations for the sale of real estate or any interest therein now or hereafter held by the Corporation, or (d) the acquisition by giving in payment, reconveyance, assignment, complete or partial release, subordination, satisfaction, cancellation or discharge of any judgment, lien security, mortgage or instrument of indebtedness now or hereafter held by said Corporation, or (e) the appointment of an attorney in fact to act for the Corporation in the foregoing matters or to acknowledge any instrument on behalf of the Corporation.'

"At the time of the adoption of the above resolution, and ever since said time, Joseph R. Smith, III, has been, and is now, appellee's Regional Manager for Region 5-B, which includes Hill County.

"It is further shown by the petition that, prior to June 1, 1936, appellants had been in default in the monthly payments for a period of time in excess of ninety days, and that on said date, because of said default, Joseph R. Smith, III, as Regional

Manager, declared all of the indebtedness then evidenced by said note due and payable, and made demand upon James Shaw, the trustee named in the deed of trust, to proceed to enforce the power of sale in the deed of trust by sale of the property therein conveyed, in the manner, during the time and at the place prescribed in said deed of trust. However on September 4, 1936, the said trustee submitted his resignation as trustee to the Regional Manager, and refused to foreclose the lien of the deed of trust by sale of the property, and on the same day said Regional Manager appointed John R. Russell substitute trustee. All of this is alleged to have been done in pursuance of said resolution of the Board of Directors.

"The substitute trustee executed the power of sale in the deed of trust, strictly in compliance with the terms of the deed of trust, and the property was sold at public auction October 6, 1936, before the courthouse door of Hill County, to the highest and best bidder for cash, at which sale appellee became the purchaser of the property. A deed of conveyance was duly executed and delivered to appellee by Russell, the substitute trustee. If the Regional Manager was clothed with lawful authority to accelerate the note in question, and was also clothed with lawful authority to appoint the substitute trustee, on the resignation of the trustee named in the deed of trust, it is admitted by appellants that the deed to appellee by the substitute trustee divested them of all title to the land described in the deed of trust and vested title in appellee.

"However, appellants, by specific allegations, contend that, by the very terms of the deed of trust, the power of acceleration and the power to appoint a substitute trustee, each rested alone in appellee and could only be exercised by appellee through its Board of Directors. Appellants also contend that the right to accelerate the indebtedness, given alone to the appellee corporation, can not be delegated by its Board of Directors to any other power or to any agent of the corporation; that likewise, the right to appoint a substitute trustee can not be delegated to any other power or agent; and that the said resolution, as a matter of law, failed to clothe the regional manager with either of these powers. Appellants further contend in this respect that, at the time of the adoption of the said resolution, the trustee named in the deed of trust had not resigned, and that there had been no default committed by appellants; that appellee could not, by such resolution, anticipate a default by appellants or the resignation of the trustee. For these reasons, appellants allege that the sale of their land by the substitute trustee was void, and that the deed by the substitute trustee,

conveying the land to appellee, was likewise void and passed no title, and that the legal title remains in appellants, subject to said lien and indebtedness thereon. The written appointment of John G. Russell as substitute trustee by Joseph R. Smith, III, was attested by the corporate seal.

"The corporation known as the Home Owners Loan Bank was created by an Act of Congress, and such Act directed the Board of Directors of said Home Owners Loan Bank to create the appellee corporation, and further directed that the Board of Directors of said Bank should be appellee's Board of Directors and should serve without extra compensation.

"Appellants contend that the said Joseph R. Smith, III, as Regional Director, had no power under the deed of trust to accelerate the indebtedness, because of the admitted default in the payment of the monthly installments, and that Smith's attempt to do so was void, because the option to accelerate the indebtedness was given to appellee, and the only agency to act for appellee in this respect is its Board of Directors. Appellants also contend that the appointment of Russell, as substitute trustee, by Joseph R. Smith, III, as Regional Director, is void, because the deed of trust places the appointment of a substitute trustee in appellee, and it could do so only through its Board of Directors, for which reasons all the acts of Russell, the substitute trustee, in the selling of the land in question and in executing to appellee a deed of conveyance, as substitute trustee, were void and did not divest appellants of title to the land in question, or vest title to same in appellee; that appellants are the legal owners of said land, subject to the deed of trust lien to secure the indebtedness.

"The disposition of this case depends upon the answers to the questions herein submitted:

"(1)   Did Joseph R. Smith, III, as Regional Manager of defendant corporation, in the general management of its business, have authority, in the absence of any resolution of the Board of Directors, to mature the indebtedness evidenced by the note executed by Helms and wife?

"(2)   Did Joseph R. Smith, III, as Regional Manager of defendant corporation, in the general management of its business, have authority, in the absence of any resolution of the Board of Directors, to appoint John G. Russell as substitute trustee under the deed of trust, after resignation of James Shaw, and direct him to sell the property under powers contained therein?

"(3)   Did the resolution of the Board of Directors of the Home Owners' Loan Corporation empower Smith to appoint

Russell as substitute trustee in place of Shaw?"

Chief Justice JONES has written an able opinion in this case, which accompanies this record, and we quote from that opinion as follows:

"It was well known that appellee entered every section of the United States, in performing its work of saving homes from immediate foreclosure, by taking up and extending existing loans. Manifestly, the vast amount of work that must be undertaken by appellee over such an extended territory could not be done from one central location, corresponding to the home office of an ordinary corporation. Because of such fact, the immense territory over which appellee was to operate was subdivided, and a Regional Manager placed in charge of each territorial subdivision. The State of Texas, together with a few other States, was placed in the territory known as Region 5-B, and Joseph R. Smith, III, was named as manager for such region. When Smith acted within the powers delegated to him as Regional Manager, his acts were the acts of appellee. In other words, it was the corporation acting through Smith. Appellee could not have performed the work it was intended it should do any other way. Appellee's board of directors was authorized to formulate rules and by-laws to control its work, and, among other things, adopted the said resolution. The very nature of the work to be performed and the vast territory to be entered made it necessary to formulate this resolution and to delegate the powers therein named to the executives therein designated. By this resolution Joseph R. Smith, III, as Regional Director, is authorized and empowered to accelerate the indebtedness owing by any of appellee's borrowers in Region 5-B, who have defaulted for more than 90 days, and also to appoint a substitute trustee. The question for decision is: Did appellee's board of directors have such power?

"The answer to the above query must be determined by the construction of the contract creating the lien, to-wit, the deed of trust, in the light of the intention of Congress in authorizing the creation of the corporation. The makers of the deed of trust provided that appellee should have the right to mature the entire indebtedness on certain prescribed defaults. Was it thereby intended that no acceleration could be made except by the affirmative act of appellee's board of directors? We do not think so, for a conclusion that it was would require the board of directors, serving without pay, to be continually in session, because of the immense amount of business transacted by appellee. The resolution empowering Regional Manager

Smith to perform the work of determining whether the reserved option to accelerate a debt should be exercised was in existence at the time the deed of trust was executed, and we believe that the designation of appellee in the deed of trust in this connection referred to any of the designated executives named in the resolution as authorized to act for appellee. The same is true in respect to the appointment by appellee of a substitute trustee to perform the office of trustee named in the deed of trust, under the contingency of such trustee's refusing to act.

"In view of appellant's contract, authorizing the appointment of a substitute trustee—not by appellants, but by appellee—appellants waived the right to be consulted as to the personnel of such substitute trustee, and left the naming of such person entirely with appellee, and in the manner its board of directors authorized in said resolution. Joseph R. Smith, III, is not a mere agent of appellee, but an administrative officer, clothed with certain designated administrative powers, and in the exercise of such delegated powers, in the administration of appellee's affairs, is as much the mouthpiece of appellee as is its Board of Directors.

"The conclusion we have expressed is not contrary to the decision of our Supreme Court in Michael v. Crawford, 108 Texas 352, 193 S. W. 1070, in which it is held that, 'The power of sale in a deed of trust is an important power. It is a method provided for the transferring of one man's property to another. The maker of the instrument has the right to impose upon its exercise such conditions as he deems necessary, and such limitations as he does impose must be strictly followed.' In the instant case the condition of the deed of trust in respect to the appointment of the substitute trustee was, as we have seen, strictly followed. In the reported case a substitute trustee was not appointed by the holder of the note, as prescribed in the deed of trust, but was appointed by an individual who merely held a power of attorney to do certain things for the holder of the note. Such individual making the appointment was not an administrative agent of the holder of the note.

"The same distinction appears in Holcomb v. Nettleton et al., 35 S. W. (2d) 745. In Fuller v. O'Neal, 69 Texas 349, 6 S. W. 181, 5 Am. St. Rep. 59, a trespass to try title suit, the defendant claimed under a trustee's deed, which showed on its face that the sale was made, not by a trustee or by a substitute trustee legally appointed, but by the trustee's agent. The case simply holds that the deed of trust conferred no authority on the trustee to delegate his power to an agent.

\* \* \*

"Under the facts of this case, we believe that Joseph R. Smith, III, appellee's Regional Manager, to whom was committed appellee's administrative affairs in Region 5-B, had the power, under the terms of the deed of trust, to accelerate appellants' indebtedness because of their default, and, likewise, had the power to appoint a substitute trustee; and that, because of his position as Regional Manager, his acts in respect to the acceleration of the indebtedness and the appointment of the substitute trustee were the acts of appellee. We also hold that, if mistaken in this, the Board of Directors had the power by the resolution above quoted to delegate to appellee's executive officers and its Regional Managers the powers therein named, and under said resolution Smith was authorized both to accelerate the indebtedness and to appoint the substitute trustee."

The three questions certified are closely related, and they will be considered together.

1 We are here dealing with a corporation, which can act only through its agents. It is well known that corporations are largely used in transacting modern business affairs by individuals, and they are also used as governmental agencies. The Home Owners' Loan Corporation was created by an Act of Congress as a Federal emergency agency to refund loans in default against the homes of bona fide owners, and to provide for the liquidation of said loans within a certain period of time. The management of the affairs of this corporation was entrusted by law to the Federal Home Loan Bank Board of Washington. Section 4-(a) of the Act reads:

"The Board is hereby authorized and directed to create a corporation to be known as the Home Owners' Loan Corporation, which shall be an instrumentality of the United States, which shall have authority to sue and to be sued in any court of competent jurisdiction, Federal or State, and which shall be under the direction of the Board and operated by it under such by-laws, rules, and regulations as it may prescribe for the accomplishment of the purposes and intent of this section. * * * "

For administrative purposes the Board has divided the United States into Regions, each Region having a Regional Manager. Region 5-B is comprised of the States of Texas, Oklahoma, and New Mexico, with Joseph R. Smith, III, as the Manager of said Region.

Chief Justice PHILLIPS, speaking for the Supreme Court

of this State, in the case of Bowman Lumber Co. v. Pierson et al., 110 Texas 543, 221 S. W. 930, 11 A. L. R. 547, lays down the rule that:

"Every corporation is created with certain express powers. Being endowed with these express powers, it has the implied power to do whatever is necessary or reasonably appropriate to their exercise. It has, in a word, the authority to do whatever will legitimately effect the express purposes of its creation."

As stated above, Smith was appointed Regional Manager of the business affairs of this corporation in this district. That appointment clothed him with authority to represent said corporation in the management of its affairs, and necessarily carried with it the authority to exercise certain powers in conducting the business which he was employed to manage. The rule generally accepted is that the general manager of a business corporation has the general control and supervision of its affairs for the carrying on of the purposes for which the corporation was incorporated. 10 Tex. Jur., p. 981, Sec. 325; 14a C. J., p. 94, Sec. (1862)-7.

2   10 Texas Jurisprudence, p. 981, Sec. 325, summarizes the powers of a general manager as follows:

"A general manager may do 'everything in the transaction of the business of the corporation that the corporation could itself do in its routine and daily business.' And where he acts as the sole representative within the state of a foreign corporation, his powers are coextensive with the powers of the corporation he represents."

See, also, Kasch v. Farmers Gin Co., (Com. App.) 3 S. W. (2d) 72; Sealy Oil Mill & Mfg. Co. v. Bishop, (Com. App.) 235 S. W. 850; Booker-Jones Oil Co. v. National Ref. Co., 63 Texas Civ. App. 142, 132 S. W. 815.

By the very nature of this corporation and the scope of its purposes it clearly appears that its directors would be scattered throughout the United States; and hence its business affairs could be conducted only by managers, and not by its head officers. Its express purpose was to make loans, collect debts, and foreclose liens in default. If the Board of Directors had to act on each loan made, had to declare the maturity of each loan when in default, and had to perform the ordinary details for the collection of its debts and the foreclosure of its liens, the efficiency of the corporation would be lessened, if

not destroyed, and the very objects of its creation nullified. Therefore, if it is to function and carry out the express purposes for which it was created, some one in charge of its business affairs must have the express or implied power to do whatever is necessary or reasonably appropriate in carrying out the objects for which it was incorporated. In order to perform the services for which it was established, its managers must possess certain definite powers. To meet the necessities of the situation, Regional Managers were appointed, with certain definite authority.

3 In making a loan by the corporation the debtor executes a note and deed of trust, in which a trustee is designated. It also provides how a substitute shall be made in the event the trustee designated therein can not or will not act. Certainly the making of the loan, the maturing of the note when in default, and the institution of foreclosure proceedings are matters that arise in the ordinary business affairs of the corporation. The manager has the power to act upon all those matters, and his acts are the acts of the corporation. The plain provisions of the deed of trust provide that the corporation may appoint a substitute trustee to make a sale of the land, in the event the original trustee is unable to do so or should resign. If the manager may take all the other necessary steps to collect the note, why should he not also have the power to name a substitute trustee as provided for in the deed of trust? Applying the foregoing principles relating to the powers of a manager to act for a corporation, we find no sound reason why the manager of this corporation could not, under the facts before us, appoint a substitute trustee to sell the property under the terms of the deed of trust, as was done.

The law under which this corporation was incorporated expressly provides that it "shall be an instrumentality of the United States," and shall exercise certain authority, and that it "shall be under the direction of the Board and operated by it under such by-laws, rules, and regulations as it may prescribe for the accomplishment of the purposes and intent of this section." Furthermore, by virtue of the law under which the corporation was created, the Board of Directors adopted a resolution, containing, among other things, the following:

"That the following officers of Home Owners' Loan Corporation, to-wit: * * * any Regional or Assistant Regional Manager, any Regional or Assistant Regional Treasurer, be, and each is, hereby authorized to execute, * * * and deliver or accept any instrument, and perform any and all acts necessary

or appropriate, in connection with: (a) * * * the appointment of substitute trustees under deeds of trust or other instruments securing debt now or hereafter held by the Corporation, or (b) the foreclosure of any mortgage or security now or hereafter held by said Corporation, including foreclosure deeds in pursuance of sales under power of attorney, * * * "

In Thompson on Corporations (3d ed.), p. 758, Sec. 1300, the general rule, which seems to be supported by the weight of authority in the United States, is announced as follows:

"Whatever may have been the strictness of the rules formerly on the question of the delegation of powers by a board of directors, it is apparent that the doctrine has been very liberally extended in recent corporation law. While some restrictions still necessarily exist, yet it is now granted that boards of directors or trustees may ordinarily delegate to a less number their general powers. What might be called the modern rule is stated in a valuable work on corporations thus: 'Where the charter, general law, or a by-law vests the general superintendence and control and active management of all the concerns of a corporation in a board of directors or trustees, as is generally the case in business corporations, the board constitutes to all purposes of dealing with others, the corporation, and do not, at least in the general management of the corporate business, exercise a delegated authority in the sense of the rule prohibiting delegation of authority by an agent; and it has been held, therefore, that they have authority, acting as and for the corporation, to delegate to subordinate officers or agents, or to a committee of their own number, the power to perform any act, in the course of the business of the corporation, which they themselves can legally perform, although the performance of the act may involve the exercise of the highest judgment and discretion.' "

4. Taking into consideration the foregoing provisions of the law and the by-laws adopted for the control and transaction of the ordinary business affairs of this corporation by its regional managers, and applying the foregoing well-settled principles of law to the facts involved here, the rule announced by this Court in the case of Temple v. Dodge, 89 Texas 68, 32 S. W. 514, 33 S. W. 222, applies. The rule announced in that case reads:

"Undoubtedly the board of directors can appoint agents, whether in the form of committees or as single agents, to transact the ordinary business of the corporation."

Therefore, it logically follows that the Regional Manager of this corporation having charge, direction, and control of its business in Texas, which consists of servicing loans, collecting debts, and foreclosing liens in default, necessarily has implied power, as a part of the routine business of the corporation, to mature installment notes that are in default; and he has the power to execute and deliver an appropriate instrument appointing a substitute trustee, in lieu of a designated trustee who has resigned, to make a sale of land according to the terms of a deed of trust, and a sale thereunder, if made in compliance with the provisions of the deed of trust, would be valid.

And it also follows that the board of directors of such corporation clearly has the power by general resolution to delegate to its regional managers, or any other agent, the authority to mature installment notes that are in default, and to execute an appropriate instrument appointing a substitute trustee, in lieu of a designated trustee who has resigned, to carry out the provisions contained in the deed of trust for a sale of the land described therein.

All three questions are answered in the affirmative.

Opinion delivered March 10, 1937.