SAN ANTONIO JOINT STOCK LAND BANK v. KATE L. TAYLOR, ADMINISTRATRIX.

No. 7233.   Decided April 28, 1937.
(105 S. W., 2d Series, 650.)

*Boone, Henderson, Boone & Davis,* of Corpus Christi, *Brooks, Napier, Brown & Matthews, John J. Cox,* and *Wm. F. Koch,* all of San Antonio, for plaintiff in error.

The appointment of a substitute trustee following the resignation of the trustee named in the deed of trust, was valid

and binding, when said appointment was made by the owner and holder of the note, acting by and through its president and under its corporate seal, the said president having been authorized by a resolution of the board of directors to act for it in the naming of a substitute trustee. Sellent-Repent Corporation v. Queens Borough Gas & Elec. Co., 290 N. Y. S. 887; Fitzhugh v. Franco-Texas Land Co., 81 Texas 306, 16 S. W. 1078; Rhoton v. Texas Land & Mort. Co., 80 S. W. (2d) 763; Compton v. Republic Bldg. & L. Assn., 67 S. W. (2d) 1095.

*Fagan Dickson,* of San Antonio, *Ward & Brown,* of Corpus Christi, *White, Taylor & Gardner,* of Austin, for defendant in error.

The relationship between a corporation and its board of directors, on the one hand, and its officers, on the other, is one of principal and agent. American Soda Fountain Co. v. Stolzenbach, 75 N. J. L. 721, 68 Atl. 1078, 16 L. R. A. (N. S.) 703, 127 Am. St. Rep. 822; First Natl. Bank of Cleburne v. Graham, 22 S. W. 1101; Gerhard Hardware Co. v. Texas Cotton Press Co., 26 S. W. 168; Simmons v. Campbell, 213 S. W. 339; Dallas Joint Stock Land Bank v. Cavitt, 93 S. W. (2d) 207 (error dismissed).

*Scarborough & Fly,* of Abilene, *Jos. D. Frank,* of Fort Wayne, Ind., *John H. Bickett, Jr.,* and *Locke, Locke, Stroud & Randolph,* all of Dallas, filed briefs as amici curiae.

MR. JUSTICE SHARP delivered the opinion of the Court.

Mrs. Kate L. Taylor, individually and as administratrix of the estate of her deceased husband, James M. Taylor, as plaintiff, brought this suit in the district court of Nueces County against the San Antonio Joint Stock Land Bank, in trespass to try title to recover 450.4 acres of land and for the cancellation of a trustee's deed, and removal of the same as a cloud from her title; and, in the alternative, for damages. The parties will be designated as they were in the trial court. The defendant answered, setting up that a deed of trust was executed by James M. Taylor to secure a note for $15,000.00 with interest; that said note was matured because of the nonpayment of installments due thereon, as provided therein and in the deed of trust; that the foreclosure was duly had under the deed of trust; and also setting up the facts showing the validity of said foreclosure and the trustee's deed made thereunder. The cause was tried before the court without a jury, and judgment was rendered denying any recovery to Mrs. Taylor and award-

ing the land and premises to the defendant. Plaintiff appealed to the Court of Civil Appeals at San Antonio. The judgment of the trial court was reversed and the case remanded with instructions, and the Court of Civil Appeals, among other things, held that the sale made by the substitute trustee was invalid and void. 101 S. W. (2d) 868. This Court granted a writ of error because of the conflict between the opinion of the Court of Civil Appeals at Dallas in the case of Helms et ux. v. Home Owners' Loan Corporation, which was certified to this Court, and the opinion of the Court of Civil Appeals in this case. The answers of this Court to the questions certified in the Helms Case are reported in 129 Texas 121, 103 S. W. (2d) 128.

The controlling question presented here involves the power of the president of the San Antonio Joint Stock Land Bank to appoint a substitute trustee to make a sale of land under the terms of a deed of trust securing a loan made by such bank, and the validity of the sale made by the substitute trustee thereunder. Other questions are raised, but, in view of the decision reached on the main question, the other issues become immaterial.

The facts are undisputed that James M. Taylor executed a deed of trust lien on 450.4 acres of land to secure the payment of a loan made by the defendant, for the sum of $15,-000.00, payable in certain installments as described therein; that Wm. B. Lupe, who was president of the defendant, was designated as the original trustee; that Taylor failed to meet certain installments of the note when due, and the amount of the note was matured. It also appears that Wm. B. Lupe resigned as such original trustee; that A. P. Graves was appointed substitute trustee therein; that the land was duly sold according to the terms of the deed of trust, and defendant purchased same; that Taylor during his lifetime surrendered possession of the property to the defendant; and that afterwards Taylor died, and his wife, Mrs. Kate L. Taylor, was appointed executrix of his estate.

The Federal Government has greatly enlarged its field of activity in financing certain projects. The Congress of the United States has authorized the creation of many corporations, such as the Home Owners' Loan Corporation, the Federal Land Banks, the Joint Stock Land Banks, and the Farm Credit Administration, as governmental agencies, to carry out certain policies of the Federal Government. The San Antonio Joint Stock Land Bank is a Federal agency created under the Federal statutes for the sole purpose of lending money on land,

and securing the same by first mortgages, and derives its powers from such statutes, and particularly from Section 676, Title 12, the fifth, sixth, and seventh subdivisions of which read as follows:

"Fifth. To elect or appoint directors, and by its board of directors to elect a president and a vice president, appoint a secretary and a treasurer and other officers and employees, define their duties, require bonds of them, and fix the penalty thereof; by action of its board of directors dismiss such officers and employees, or any of them, at pleasure and appoint others to fill their places.

"Sixth. To prescribe, by its board of directors, subject to the supervision and regulation of the Farm Credit Administration, by-laws not inconsistent with law, regulating the manner in which its stock shall be transferred, its directors elected, its officers elected or appointed, its property transferred, its general business conducted and the privileges granted to it by law exercised and enjoyed.

"Seventh. To exercise, by its board of directors or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business herein described." (July 17, 1916, Chap. 245, Sec. 4, 39 Stat. 363; Mar. 27, 1933, Ex. Or. 6084). (Supplement VII to U. S. Code, p. 185 [12 U. S. C. A., Sec. 676, subds. 5th, 6th, 7th].)

Certain provisions in the deed of trust involved here read as follows:

"If the said Trustee shall die, or shall remove from the State of Texas, or shall be disqualified from acting in the execution of this trust, or shall fail or refuse to execute the same when requested by the owner or holder of said debt so to do, said owner or holder shall have full power to appoint, without notice to us, by written instrument duly recorded in said County, a Substitute Trustee, and, if necessary, several Substitute Trustees in succession, who shall succeed to all the estate, rights, powers and duties of the said Wm. B. Lupe, Trustee, and we do hereby ratify any and all acts which the said Wm. B. Lupe, Trustee, or his successor or successors in this trust, shall do lawfully by virtue hereof."

"It is stipulated and agreed by the parties hereto, that in any deed or deeds executed by the Trustee hereunder, any and all statements of fact, or other recitals therein made, as to the non-payment of the money secured, or as to the request to the trustee to enforce this trust, or as to the proper and due appointment of any substitute Trustee, or as to the ad-

vertisement of sale or as to the time, place and terms of sale, and the property to be sold having been duly published, or as to any other preliminary act or thing having been duly done by said Trustee, shall be taken by any' and all courts of law and equity, as prima facie evidence that the said statements or recitals do state facts, and without further questioning, shall be accepted as such by us, our heirs, assigns, administrators and legal representatives."

On January 21, 1931, the board of directors of the San Antonio Joint Stock Land Bank adopted a resolution, which, in so far as material to this case, reads as follows:

"THEREFORE BE IT RESOLVED BY THE BOARD OF DIRECTORS of said THE SAN ANTONIO JOINT STOCK LAND BANK OF SAN ANTONIO that when the said Wm. B. Lupe, or any trustee named in any deed of trust held by said THE SAN ANTONIO JOINT STOCK LAND BANK OF SAN ANTONIO securing to it the payment of any note or notes held by it which has matured, or which has been declared due and payable by said Bank, acting by and through its Executive Committee, is requested to enforce the deed of trust, and to execute the trust therein imposed, and should he or they fail or refuse to do so, there shall be and are appointed, and that the President and any of the Vice-presidents of said The San Antonio Joint Stock Land Bank of San Antonio, be and they are hereby authorized to appoint, with the attestation of its Secretary under its corporate seal, as Substitute Trustee or Trustees, the following: S. P. Smith of Dallas, Dallas County, Texas; A. P. Graves, L. H. Hopkins, J. M. Reed and Wm. F. Koch of San Antonio, Bexar County, Texas; and Elmer F. Sanson of Plainview, Hale County, Texas, any one of whom, when so appointed, shall succeed to all of the rights and powers of the trustee named in said deed of trust.

"BE IT FURTHER RESOLVED THAT THE EXECUTIVE COMMITTEE of said THE SAN ANTONIO JOINT STOCK LAND BANK OF SAN ANTONIO is hereby authorized to mature and declare due and payable any and all notes held by said Bank which are now or may hereafter become delinquent, or which may be matured for failure on the part of the maker or makers to perform any condition or requirement provided for in said note or the deed of trust securing the payment thereof."

The note involved here was declared due by the bank, acting through its executive committee, for the nonpayment of installments past due. On the 5th day of November, 1932, W. B. Lupe, trustee in said deed of trust, tendered his resignation in writing. On the same day the defendant, as the owner

and holder of said note, appointed A. P. Graves substitute trustee in the place of W. B. Lupe. This appointment was in writing, executed by the San Antonio Joint Stock Land Bank, by Wm. B. Lupe, president, and attested by its secretary, and, among other things, contained the following:

"Now THEREFORE, KNOW ALL MEN BY THESE PRESENTS: That the said THE SAN ANTONIO JOINT STOCK LAND BANK OF SAN ANTONIO, a corporation duly incorporated under the laws of the United States of America, with its domicile and principal office in the City of San Antonio in Bexar County, Texas, the legal owner and holder of said note, acting herein by and through Wm. B. Lupe, its President, thereunto duly authorized by resolution of its board of directors, has and by these presents does appoint A. P. Graves of Bexar County, Texas, Substitute Trustee under said deed of trust; and the said A. P. Graves as substitute trustee shall be invested with all of the powers and rights conferred upon the said Wm. B. Lupe, Trustee, by said deed of trust; and said THE SAN ANTONIO JOINT STOCK LAND BANK OF SAN ANTONIO, the aforesaid legal owner and holder of said note, does hereby request that said A. P. Graves, substitute trustee, to proceed to enforce said trust, and to sell said land to satisfy the amount due on said note in accordance with the provisions of said deed of trust."

The substitute trustee, at the request of the bank, proceeded to enforce the trust, and sold the property, after due notice and in accordance with the terms of the deed of trust and the law, on December 6, 1932. The property was bid in by the defendant for $8,500.00, and this amount was credited on the debt, and the substitute trustee executed a deed to said property.

This corporation can transact its business only through its officers or its agents. It makes many loans, and the record discloses that certain trustees are designated in the deeds of trust given to secure the loans made by it. The law under which it was created specifically authorizes the directors "to elect a president and vice president and other officers," and to "define their duties." Section 6 authorizes the board of directors to regulate the manner of electing and appointing its officers, transferring its property, and prescribes how its "general business shall be conducted and the privileges granted to it by law exercised and enjoyed." Furthermore, section 7 authorizes the corporation "to exercise, by its board of directors or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business herein described."

The deed of trust expressly provides for the appointment of a substitute trustee under certain conditions, among others, in case the original trustee should fail or refuse to execute the same when requested by the owner or holder of said debt so to do. Said owner or holder of the note, or notes, shall have full power to appoint a substitute trustee to carry out the powers and duties imposed upon the original trustee, as provided for by the terms of said deed of trust. The resolution adopted by the board of directors specifically provides that when Wm. B. Lupe, or any trustee named in any deed of trust held by the San Antonio Joint Stock Land Bank securing to it the payment of any note or notes held by it, which have matured or which have been declared due and payable by said bank, acting by and through its executive committee, should fail or refuse to act as said trustee as provided for in said deed of trust, that the president and any of the vice presidents of said San Antonio Joint Stock Land Bank are authorized to appoint, with the attestation of its secretary under its corporate seal, a subsitute trustee selected from six names mentioned therein.

Thus we see that in order to transact its business and carry out the purposes for which it was created, this corporation expressly provides in the deed of trust for the appointment of a substitute trustee in lieu of the original trustee; and it is also provided that the executive committee is authorized to declare due and payable notes due the bank, and that the president and any of the vice presidents of said corporation are authorized to appoint a substitute trustee or trustees from certain named persons; and such persons when so appointed shall have full power to make sales of land as provided for in said deed of trust.

1 This Court in the case of Bowman Lumber Co. v. Pierson et al., 110 Texas 543, 221 S. W. 930, 11 A. L. R. 547, in discussing the powers of a corporation, announced the following rule:

"Every corporation is created with certain express powers. Being endowed with these express powers, it has the implied power to do whatever is necessary or reasonably appropriate to their exercise. It has, in a word, the authority to do whatever will legitimately effect the express purposes of its creation."

2 The trend of recent laws and decisions relating to the delegation of powers by boards of directors of corporations to officers or agents, to transact the business affairs of the corporations, is toward a more liberal extension of such powers.

Thompson on Corporations, (3d ed.) p. 758, Sec. 1300. In the case of Tempel v. Dodge, 89 Texas 68, 32 S. W. 514, 33 S. W. 222, this Court, in speaking of the power of corporations to appoint agents, said:

"Undoubtedly the board of directors can appoint agents, whether in the form of committees or as single agents, to transact the ordinary business of the corporation."

3   In Thompson on Corporations, (3d ed.) p. 758, Sec. 1300, the general rule relating to the powers of boards of directors of corporations to delegate certain authority to subordinate officers or agents, which seems to be supported by the weight of authority, is announced as follows:

"It has been held, therefore, that they have authority, acting as and for the corporation, to delegate to subordinate officers or agents, or to a committee of their own number, the power to perform any act, in the course of the business of the corporation, which they themselves can legally perform, although the performance of the act may involve the exercise of the highest judgment and discretion."

4   The rule is generally accepted that the president of a corporation may be entrusted by the board of directors with the management of the business of such corporation, and he may perform for the corporation the business it is authorized to transact. 10 Tex. Jur., Sec. 322, pp. 979-980; 14a C. J., Sec. 1858, pp. 93-94. In this instance the president of the San Antonio Joint Stock Land Bank has been authorized by the board of directors to appoint substitute trustees when needed. The history of this character of corporation, the purposes for which it was created, and the extent to which it is used by the Federal Government, are too well known to require discussion. If it is to function and perform the services for which it was created, the powers of its officers or agents should not be too strictly construed in the appointment of substitute trustees, when transacting its business in carrying out the objects for which it was incorporated. The recent case of Helms v. Home Owners' Loan Corporation, 129 Texas 121, 103 S. W. (2d) 128, involved the power of a regional manager to appoint a substitute trustee where the original trustee had resigned, as here, and we held in that case, after reviewing the authorities, that such action was valid and the sale of the land made thereunder was binding. The principles involved in that case are analogous to the principles involved here, and we refer to that case for a more detailed discussion of the questions involved there. Applying the principles announced in that case

to the facts before us in this case, the appointment of such substitute trustee and the sale of the land under the provisions of the deed of trust in this case are valid and binding on the parties.

It is contended that the rule announced in the case of Michael v. Crawford, 108 Texas 352, 193 S. W. 1070, Holcomb v. Nettleton, 35 S. W. (2d) 745, Fuller v. O'Neal, 69 Texas 349, 6 S. W. 181, and other similar cases, control this case. We think the facts in this case are clearly distinguishable from the facts involved in the cases above cited. Here we have a corporation making many loans, involving large sums of money, scattered over a great part of Texas. A certain trustee is designated in the deed of trust. In the event of the failure or refusal of the designated trustee to act, the directors have empowered the president to appoint a substitute trustee out of a list of six specifically named for that purpose, located in different parts of Texas, as the necessity arises. The maker of the note agreed in the deed of trust executed by him that a substitute trustee could be appointed in case the original trustee failed to act. In this instance the original trustee resigned, and it was necessary to appoint a substitute trustee to carry out the provisions of the deed of trust and make the sale. The president made such an appointment. If the appointment of a substitute trustee is too strictly construed, the corporation would be seriously handicapped in the performance of the services for which it was created, and in the transaction of its ordinary business affairs. There is no contention made that the substitute trustee in this case did not fully comply with the law and the provisions of the deed of trust in making this sale, or that he acted in any way improperly as such substitute trustee in making the sale.

Therefore, the judgment of the Court of Civil Appeals will be reversed, and the judgment of the trial court will be affirmed.

Opinion delivered April 28, 1937.