## HAMBLEN v. HORWITZ–TEXAN THEATRES CO., Inc.

### No. 11403.

Court of Civil Appeals of Texas. Galveston.
April 30, 1942.

Rehearing Denied May 21, 1942.

W. P. Hamblen, Jr., Albert J. DeLange, Frank A. Stamper, and R. P. Beman, Jr., all of Houston, for appellant.

John P. Bullington, of Houston (Baker, Botts, Andrews & Wharton, of Houston, of counsel), for appellee.

GRAVES, Justice.

This appeal, pursuant to Rule 385(d), Texas Rules of Civil Procedure, is from an order of the 80th District Court of Harris County, entered after an extended hearing at which evidence was presented, temporarily enjoining the appellant, individually and as independent executor and trustee under the will of Will Horwitz, deceased, from interfering with the management and control of the appellee corporation's conduct of its own business affairs, by and through its acting directors and officers, whom the court found to have been theretofore duly elected and qualified, as well as to be lawfully acting as such at that time, to-wit, January 30, 1942. Its terms further interdicted him from "attempting to influence or control the employees of Horwitz-Texan Theatres Company, Inc., or any of them, in connection with their duties as employees of said Horwitz-Texan Theatres Company, Inc., until final hearing hereon."

In so doing, the court overruled the main contention of the appellant, made initially below, and reiterated here, that, being clothed with the capacities indicated, he had a contractual right not only to be at that time president and director of the appellee corporation, but also to manage, direct, and control its corporate affairs, to the exclusion of its then existing board of directors, whom he admitted to have been so duly elected and qualified for their offices, but whom he claimed to have been shorn of all official authority by the contractual relation he declared upon.

The court supported its decree by full findings of fact and law, continuing the pre-existing status quo of the corporation's pursuit of the purposes of its creation by leaving it under the management of its officers and board of directors, upon stated conclusions to the effect that, under the Texas laws, such board of directors had

both the right and the duty to manage and control its affairs, and that appellant's attempt to interfere therewith was unwarranted and unlawful.

These findings need not be at length repeated here, but only what are deemed to be the determinative features will be adverted to.

The substratum of appellant's cause of action was the contract or agreement made on February 13, 1928, at New Orleans, Louisiana, between "Will Horwitz, and associates", constituting all of the stockholders of Horwitz-Texan Theatres Company, Inc., on the one hand, and Texas Theatres Company, a Delaware Corporation, on the other hand.

At the threshold it is thus shown to have been one between all the stockholders of this appellee as individuals, on the one side, and the Delaware Corporation as a like stockholder, on the other; that is, it was not one between this appellee's board of directors and officers, acting for it, but one between its individual stockholders, pooling their individually owned stock in the appellee corporation with that of the other contracting party, the Delaware Corporation, that, in turn, owned certain stock in other theatre companies in Houston, in which "Will Horwitz and associates" were jointly interested, for stock-pooling purposes between the two such parties, deemed by them to be to their mutual advantage.

So that, upon the face of it, this basic contractual right the appellant declared and acted upon throughout the transactions reflected by this litigation, was not at its inception, nor was it thereafter in any way developed or metamorphosed into an agreement of any other character.

The gist of that contract, the full implications and detailed meanings in which are so comprehensively detailed in the trial court's findings, was thus a pooling by those parties of their separately-owned blocks of stock, in what was generally known, as the Will Horwitz Theatres in Houston, for operative purposes, and, as a major part of it, they agreed to jointly form another corporation to thereafter take over and operate the interests of both sides, as evidenced by this part of paragraph 1 thereof:

"I. Parties hereto agree to form forthwith a corporation under the laws of the State of Louisiana (or such other state as may be determined by their counsel), which shall have a capital stock with shares of nominal or no par value. One-half of said capital stock shall be acquired by the parties of the first part, and the other one-half shall be acquired by the party of the second part, for the consideration hereinafter set out.

"The name of said corporation shall be Isis-Horwitz Theatre Company, Inc."

That purpose was carried out, the Louisiana corporation was so organized and became the owner of all the stock of this appellee, and in it the same one-half of the stock so owned in this appellee by "Will Horwitz and associates"—to-wit, himself and his wife, Mrs. Agatha Horwitz —persisted into the Louisiana corporation.

There were, in the interval between such creation of the Louisiana corporation and this trial below, other such changes in the theatre situation in Houston, in which the separate interests here involved were so concerned, that, for all practical purposes, without enumerating them, there came to be involved in this cause at the trial thereof only what was termed the parent corporation, Isis-Horwitz Theatre Company, Inc., of Louisiana, as so jointly incorporated, and its own wholly owned subsidiary, this appellee.

The upshot of all these dealings, as the trial court so ably determined, in ultimate effect was, that the 50-50 owners of the business represented by the stock of the Louisiana corporation simply so associated themselves together as stockholders in the several ownerships of the equal blocks of stock in the Louisiana Corporation, designated as Classes A and B, which at the time of Mr. Horwitz's death on December 25 of 1941, stood as follows: Class A Stock was owned, $\frac{1}{4}$ by Mrs. Horwitz and $\frac{3}{4}$ by Mr. Horwitz, whereas the other 50%, or all of Class B stock, was owned by Interstate Circuit, Inc.

It thus becomes apparent that appellant, as the successor in interest of Mr. Horwitz, only acquired $\frac{3}{4}$ of $\frac{1}{2}$, or $37\frac{1}{2}$ per cent, of the beneficial interest of the property here involved, whereas his widow owns $12\frac{1}{2}$ per cent, and the Interstate Circuit, Inc., the other 50 per cent. Wherefore, by virtue of the contract he declared upon, appellant sought to take from the board of directors of the appellee company their authority, under such statutory law as our R.S. Article 1327, to manage and control the corporation, of which they were the de jure officers, in ad-

vance of any action upon their own part, and to exercise their official discretion for them he having at that time no better right than that of such a minority stockholder in the Holding Company.

█ This court follows the able trial court in holding that only the board of directors of the appellee-corporation had such authority, and that this contract, which undertook, in advance, to take it away from them and to place it in the hands of such a minority holder of stock in the parent corporation as the appellant was indisputably shown to have been, was in direct contravention of this State's public policy, as so expressed. It follows that its provisions, some of which, it may be conceded, did undertake to provide for such action, must be stricken down as invalid and ineffective. These authorities are thought to support that conclusion: Article 1325, R.S.1925; Article 1327, R.S.1925; Funkhouser v. Capps, Tex.Civ.App., 174 S.W. 897; Atlas Pet. Corp. v. Galveston, H. & S. A. R. Co., Tex.Civ.App., 5 S.W.2d 215; Adams v. Farmers Gin Co., Tex.Civ. App., 114 S.W.2d 583; Arno Co-operative Co. v. Pugh, Tex.Civ.App., 177 S.W. 991; St. Regis Candies, Inc., v. H. N. Hovas, 117 Tex. 313, 3 S.W.2d 429.

██ It is further determined that two well-established doctrines of our law have been eliminated from application to this distinctive case by the pleadings, the evidence, and the court's findings thereon, either stated, on sufficient proof, or conclusively presumed in law as supporting its action, to-wit:

(1) That "voting-trusts" may be validly entered into between the stockholders of a Texas corporation, provided the agreement does not have for its purpose the putting in control of a minority, or some other illegal end;

(2) That, where one corporation owns all of the stock of another corporation, and uses the latter as a "mere agency" or "mere instrumentality" for perpetrating fraud, or for the purpose of evading the law, the corporate fiction will be disregarded to prevent the attainment of either objective.

Neither may this contract be supported by the holdings in San Antonio, etc., Bank v. Taylor, 129 Tex. 335, 105 S.W.2d 650, and Helms v. H. O. L. C., 129 Tex. 121, 103 S.W.2d 128; because both those cases deal solely with the power of the Board of Directors of a corporation to delegate its authority, not with the attempt of mere stockholders to exercise their authority for them, far in advance of any action thereon whatever on their own part.

Many other questions are discussed in the briefs, but since the conclusions stated are thought to determine the merits of the appeal, they will not be gone into.

█ No abuse of a sound judicial discretion having been made to appear, the appealed-from judgment may not be disturbed. Harding v. W. L. Pearson & Co., Tex.Com.App., 48 S.W.2d 964.

An affirmance will enter.

Affirmed.

### On Motion for Rehearing.

Appellant's motion for rehearing considerately thus calls the court's attention to an inadvertence in its former opinion:

"Appellant calls attention to the fact that Mrs. Agatha Horwitz is not the widow of Will Horwitz, and, in view of the fact that this appellant has no difference with the widow of Will Horwitz, but on the other hand is taking this action with her full approval, appellant would like the record to clearly show that Mrs. Agatha Horwitz is not the widow of Will Horwitz. The confusion probably comes about by virtue of the fact that Mrs. Agatha Horwitz was at one time the wife of Will Horwitz, but they were long since divorced."

The correction is made as requested, since the record does clearly show that Mrs. Agatha Horwitz is not the widow of Will Horwitz.

In other respects also the motion has received careful consideration, but under the conclusion that the cause was properly decided before, it will be overruled.

Overruled.