## CORN v. FIRST TEXAS JOINT STOCK LAND BANK OF HOUSTON et al.

### No. 13930.

Court of Civil Appeals of Texas.
Fort Worth.
June 30, 1939.

Rehearing Denied Sept. 29, 1939.

William R. Watkins and Maurice Short, both of Fort Worth, for appellant.

Atwood McDonald, of Fort Worth, for appellee Frank Corn.

Culbertson & Morgan, of Fort Worth, for appellee First Texas Joint Stock Land Bank of Houston.

SPEER, Justice.

This suit was originally instituted on June 8th, 1934, in the name of Elizabeth Corn and Frank Corn, as plaintiffs, against First Texas Joint Stock Land Bank of Houston, as defendant, for the cancellation of a trustee's deed, to 500 acres of land in Tarrant County, dated January 3rd, 1933. It was tried and judgment entered on March 28th, 1938. During the period of time covered, many events transpired, which affect the results attained, and it is therefore thought proper to relate sufficient facts and pleadings, as will clarify the matters complained of on appeal. For convenience, we shall refer to defendant, First Texas Joint Stock Land Bank, as the Bank, and to other parties by name.

As above indicated, a petition was filed on the date named, in which Elizabeth Corn and Frank Corn sued the Bank to cancel a trustee's deed. The petition discloses that prior to December 28th, 1927, Hester A. Corn, a widow, the grandmother of Elizabeth Corn and the mother of Frank Corn, was the owner of a certain 691 acres of the Matthews Survey in Tarrant County; that on the date last mentioned, Hester A. Corn, joined by a son, W. L. Corn, and his wife, executed a deed of trust lien on a described 500 acres of the 691 acre tract, to secure payment of $8,500 to the defendant Bank. C. S. E. Holland was named as trustee in the deed of trust.

That thereafter, on October 15th, 1928, by separate deeds, Hester A. Corn conveyed to each Elizabeth Corn and Frank Corn an undivided one-half interest in the 500 acres (and to the remaining 191 acres), in which conveyances a life estate was reserved to grantor, and the further reservation that the conveyances were subject to the lien to the Bank on the 500 acres.

That in October or November of 1932, the debt had become delinquent and the Bank notified W. L. Corn (father of Elizabeth) that it could no longer carry the loan in its then condition and that he would be given a reasonable time in which to refinance the loan; that plaintiffs began at once to arrange to refinance the indebtedness and pursued their efforts with due diligence; but that the Bank, without withdrawing its offer to give the makers of the note a chance to refinance the obligation, attempted to sell the land and to make a trustee's deed thereto, which sale and deed plaintiffs sought to cancel and set aside because they had refinanced the loan and tendered to the Bank payment of its indebtedness. Prayer was for cancellation of the trustee's deed shown to have been dated January 3rd, 1933.

On February 26th, 1935, Elizabeth Corn, as sole plaintiff, filed a first amended petition, in which Frank Corn was in no wise made a party, either as plaintiff or defendant. In this amendment, the Bank is sued in similar form as in the original petition, and Wm. Flemming is made a party defendant under an allegation that he is asserting some kind of claim or interest to the land. Further allegations were made that Frank Corn had, prior to the date of filing the amended pleading, conveyed his interest in the land to plaintiff, Elizabeth Corn, and that she was therefore authorized to prosecute the suit in her own name. In addition to the reasons for cancelling the trustee's deed, as set out in the original petition, it was claimed in the amendment that the resignation by C. S. E. Holland, as trustee, and the subsequent appointment of B. P.

Adams, as substitute trustee, were void and the latter's deed at the sale on first Tuesday in January in 1933 was likewise void. Prayer was for its cancellation, and that the Bank be required to accept plaintiff's tender of payment, and that she be quieted in her title as against both the Bank and Flemming.

The newly made defendant, Flemming, answered on May 8th, 1935, with general denial and specially that he had entered into a contract with the Bank under date of February 18th, 1933, for the purchase of the 500 acres of land in controversy. He attached to his pleading' a copy of the contract, and plead that he had deposited in escrow the amount agreed to be paid when the title was made acceptable; that the suit by Elizabeth Corn against the Bank clouded the title and that when that cloud was removed, he stood ready, able and willing to consummate the purchase. He prayed that his rights be protected by the court in its final decree.

On May 30th, 1935, the Bank filed its second amended answer to Elizabeth Corn's amended petition, in which answer it presented a cross action against Elizabeth Corn, Frank Corn, William L. Corn, C. C. Littleton, Hester Littleton, Opal Corn Keating, Jack Corn, C. Franklyn Yeager, William Corn Yeager, Robert Yeager, Anson Yeager, Iver Yeager, as 'all of the heirs or their descendants of Hester A. Corn, deceased, and also included the defendant, Wm. Flemming. The defensive matters plead consisted of the ownership of the 500 acres of land by Hester A. Corn, her death in April, 1934, the Bank's note and lien executed by Hester A. Corn and W. L. Corn and wife, the subsequent default and the sale of the land by the substitute trustee on January 3rd, 1933, and the purchase by it at the sale. That on January 1st, 1934, it was lawfully seized and possessed of the land and that those persons named in the cross action unlawfully ejected it and held possession thereof, and prayed for title as in trespass to try title.

In the second count, and in cross action, the Bank plead in the alternative that if it should be denied relief under the first count, it set out in detail its debt and lien, repeated its allegations showing default, notice of intention to foreclose, and prayed for citation and finally for judgment establishing its debt and lien and for a foreclosure as against all cross defendants.

On March 2nd, 1938, plaintiff, Elizabeth Corn, filed a second amended petition against the Bank and named Frank Corn as a defendant, but did not name Flemming as a defendant. In her amended pleading, plaintiff, Elizabeth Corn, repeated her former allegations, to the effect that the Bank had promised to give her an opportunity to refinance the loan before it was sold out, that she had endeavored to accomplish this, but that before she could consummate the deal the Bank had disregarded its promise and sold the land out by trustee and purchased it in for $5,000. That the sale made by the substitute trustee to the Bank and the deed were void, for reasons shown in the former pleading.

As against the newly made defendant, Frank Corn, plaintiff alleged in substance that disregarding his former conveyance to her of his interest in the land, as alleged in her former pleadings, to enable her to prosecute the suit in her own name, for the joint use and benefit of the two, and after Wm. Flemming had filed his disclaimer in said suit and was dropped therefrom as a party, the said Frank Corn entered into an unlawful conspiracy with the Bank to purchase from it all of said 500 acres of land, and to thereby cheat, wrong and defraud plaintiff out of her interest therein. That pursuant to said conspiracy and fraudulent purpose, said Frank Corn did purchase from the Bank said 500 acres of land, for the agreed price of $12,000, the amount of the indebtedness originally held by the Bank. That said purchase was in fact and in law for the use and benefit of plaintiff and Frank Corn; that because plaintiff and Frank Corn were joint tenants, the acts of Frank Corn, in making said purchase, resulted in a trust, whereby the title so purchased was for the joint benefit of the two. The date of the conveyance from the Bank to Frank Corn is not alleged, but the record indisputably shows it to be April 22nd, 1936. In plaintiff's prayer to the amended pleading mentioned, upon which the case was tried, no relief is sought against the Bank, but she prays for judgment declaring her to be the owner of an undivided one-half interest in the 691 acres of land (which acreage includes the 500 acres in controversy) and that her interest be decreed to be free of all encumbrances. Alternatively she prays that if she be not decreed a one-half interest in the 500 acres, free of liens and encumbrances, then that the court ascertain the true amount due

the Bank on said indebtedness and that her undivided one-half interest be impressed with an equitable lien for said one-half of the indebtedness and that she be given a reasonable time in which to pay it. She prayed for partition of the whole 691 acres as between herself and Frank Corn, and for general and special relief.

The defendant, Frank Corn, filed his answer to Elizabeth Corn's amended pleading and to the Bank's cross action, on March 28th, 1938. He denied generally and specially the allegations in plaintiff's amended pleadings; that he did not at any time authorize Elizabeth Corn or any other person to institute the suit in his name; that he had never ratified any part of it, and that he had made no agreements with plaintiff whereby she should prosecute such a suit in her name and account to him in any way after its termination. That he knew nothing of the foreclosure proceedings by the Bank for more than a year after it was done. That he had never disputed the title of the Bank to the 500 acres of land after it was sold out by the substitute trustee to the Bank; that he had always considered that the Bank procured good title at the sale and could likewise sell and make title thereto. He further answered that Elizabeth Corn had estopped herself to deny the title of the Bank, in that after the Bank had purchased the land at trustee's sale and had contracted to sell it to Wm. Flemming, she, acting through her father, W. L. Corn, and for their own use and benefit and not for the benefit of him, the said Frank Corn, contracted with said Flemming to purchase his contract with the Bank, thereby recognizing and confirming the title of the Bank, repudiating and terminating any relation of joint tenancy between plaintiff and defendant. Further answer was made that he never at any time executed and delivered a deed of his interest in said lands to Elizabeth Corn, to enable her to prosecute a suit against the Bank, but that he did negotiate with her in regard to such a deal, in which he orally agreed to make a deed to her of his interest if she would purchase the land from the Bank in a way so as to let defendant take half of the land unencumbered; that he did, under those conditions, execute a deed to Elizabeth Corn (shown by the record to have been dated February 19th, 1935) but that the conditions were never met and the deed was never delivered. That after plaintiff and her father (W. L. Corn) had failed in their efforts to purchase the land from the Bank, he did purchase it from the Bank, at the agreed price of $12,000 for his own use and not for the use of plaintiff or for their joint use and benefit, at a time when all former relationship of joint tenants between him and plaintiff had long since ceased.

Defendant, Frank Corn, prayed that neither plaintiff nor the Bank, by its cross action, take anything against him, and for general relief.

No jury being demanded, the case was tried to the court. Judgment was entered that Elizabeth Corn take nothing as against the Bank, with respect to the 500 acres of land; that she was not entitled to have the sale by the substitute trustee and his deed to the Bank set aside; the sale and deed by the substitute trustee were ratified and confirmed; and that said Elizabeth Corn take nothing as against Frank Corn, under her claim that said Frank Corn had purchased the land from the Bank in trust for the use and benefit of himself and plaintiff. It was decreed that the remaining 191 acres not involved in this suit was owned jointly by Elizabeth Corn and Frank Corn, was susceptible to partition, and it was ordered partitioned.

The judgment awarded to the Bank on its cross action title to the 500 acres as against all cross defendants, without prejudice to the rights of Frank Corn, acquired by his deed from the Bank, dated April 22nd, 1936.

Frank Corn recovered title to the 500 acres as against Elizabeth Corn and against the Bank, subject, however, to the unpaid purchase money owing by Frank Corn to the Bank and the lien securing same.

All cross defendants in the Bank's cross action were properly disposed of by the judgment of the court. No issue is made as to any of them and no discussion on that point is necessary. Nor is it necessary to further mention the partition of the 191 acres as ordered by the court. Elizabeth Corn was allowed nothing for rentals on the 191 acres while in the possession of Frank Corn, because it was found that the improvements placed thereon by him, for which no recovery was allowed, balanced his liability for rentals. From this judgment Elizabeth Corn has appealed.

Plaintiff below, Elizabeth Corn, presents this appeal on eight assignments of error,

all of which, except No. 5, challenge the court's judgment in regard to her right of recovery against Frank Corn. These assignments of error, omitting No. 5, are in substance: (a) The court erred in holding that Elizabeth and Frank Corn did not make a contract by which they would be joint owners of so much of the 500 acres as should thereafter be acquired by suit or settlement with the Bank. (b) The court erred in holding that the contract between Elizabeth Corn and Frank Corn did not create a fiduciary relation between them, precluding either from taking advantage of the other in acquiring the title from the Bank. (c) Court erred in holding that Frank Corn was not guilty of a fraud in the purchase of the 500 acres from the Bank, and in violation of the constructive trust created by law when he so purchased the land for the benefit of both. (d) It was error for the court to refuse to award to Elizabeth Corn an undivided one-half interest in the 500 acres and to order it partitioned along with the remaining 191 acres. (e) It was error for the court to refuse to hold that Elizabeth and Frank Corn were joint tenants as to the entire 691 acres. And (f) the court erred in holding that the fact that the Bank had foreclosed made it permissible for Frank Corn to purchase the 500 acres for his own use and to exclude Elizabeth Corn from ownership of any part thereof. Assignment No. 5 reads: "The court erred in failing and refusing to hold that under the uncontradicted evidence Frank Corn had forcibly taken possession of the premises in question and was liable to Elizabeth Corn for one-half the reasonable rental value thereof."

It will be observed that no complaint is made on this appeal that the court held against Elizabeth Corn in her alleged cause of action against the Bank. She had alleged that the sale by the Bank was void, (1) because it had promised to give her an opportunity to refinance the loan, and had failed to do so; (2) because the named trustee had no legal right to resign and have the substitute trustee appointed in the manner done, and therefore the sale was void. Counsel for appellant, Elizabeth Corn, virtually concede in their briefs that the holding in San Antonio Joint Stock Land Bank v. Taylor, 129 Tex. 335, 105 S.W.2d 650, is against her contention. A somewhat similar rule was announced in Helms et ux. v. Home Owners' Loan Corporation, 129 Tex. 121, 103 S.W.2d 128. It must follow, then, that all right, title and interest that Elizabeth Corn and Frank Corn had in the 500 acres of land passed out of them, and each of them, when it was sold out under the deed of trust lien on January 3rd, 1933. The Bank became the purchaser at that sale and was thereafter vested with full and complete title thereto, insofar as Elizabeth and Frank Corn were concerned. On April 22nd, 1936, the Bank sold the land to Frank Corn for $12,000, part cash and part in deferred payments. The sole question presented by this appeal is whether or not that joint tenancy between Elizabeth Corn and Frank Corn, which existed during the time of their joint ownership of an equity in the land, continued to exist up until the time of the purchase by Frank Corn. If so, then a fiduciary relationship existed between them, which would preclude Frank Corn from purchasing the land to the detriment of Elizabeth Corn, and his purchase would be in trust for their mutual benefit. Upon the other hand, if that relationship had ceased to exist since the date of the sale by the trustee to the Bank, then Frank Corn owed Elizabeth Corn no obligation, except to deal fairly and not practice a fraud upon her in regard to any rights she may have had.

There can be no question but that from and after the date of the conveyances from Hester A. Corn to Elizabeth Corn and Frank Corn, on October 15th, 1928, subject to the Bank's indebtedness and lien, they were joint tenants in the entire 691 acres. Such relation is characterized by the joint ownership by them of an estate in the land, regardless of the extent, nature or tenure of the respective interests. Republic Production Co. v. Collins, Tex.Civ.App., 7 S.W.2d 187, writ refused; Caldwell v. Farrier, Tex.Civ.App., 248 S.W. 425; 11 Tex.Jur., p. 417, sect. 10.

Co-tenancy may be terminated in many ways, the most common being partition among them, or by one acquiring the interest of the other, and certainly the relation may be terminated when either or both shall sell or otherwise dispose of their interest in the common property. 11 Tex. Jur., p. 430, sect. 20.

The undisputed facts in this case show that the only interest either Elizabeth Corn or Frank Corn had in the 500 acres was subject to the debt and lien held by

the Bank; this debt was evidenced by notes containing accelerating maturity clauses, secured by a deed of trust, conferring power upon the trustee to sell the land, upon default, at the time and in the manner provided in that instrument. That the land was so sold and that the Bank bought it in at trustee's sale. The Bank thus acquired the record title and there is no good reason which presents itself to us why it could not thereafter sell and pass good title to the land. We are not so much concerned, however, about the title that the Bank could pass by its conveyance as we are about this unity of fiduciary relationship that was recognized to exist between Elizabeth and Frank Corn while they jointly owned an equitable estate in the land.

In 7 Ruling Case Law, page 867, sect. 61, these statements of the law are found: "If without collusion a third person purchases the common property at a judicial sale, for the debt of all, and afterwards conveys the title to one of the former co-tenants, such co-tenant will take a good title as against even his co-tenants; for the title to the entire property having, for the debt of all, passed by regular sale to a third person (the Bank in this case) the relation of co-tenancy ceased and none of the tenants owed any duty thereafter to the other tenants in regard to it." The text from which we have quoted indicates, and we think properly so, that if the purported original sale to a third person was simulated, and was intended to be for the benefit of one of the tenants in common, the rule would be different. Such event would be equivalent to one tenant fraudulently preventing another to bid at a public sale of the common property, upon the understanding, expressed or implied, that the purchase would be for the benefit of all.

We are well aware of the jealous care that has been given by our courts in an effort to see that one who stands in a fiducial relationship to another does not violate that sacred obligation, under any beguiled pretext. This tendency of our courts is fully demonstrated by the holdings in Hendrix v. Nunn, 46 Tex. 141; Johnson v. Peckham, Tex.Sup., 120 S.W. 2d 786, 120 A.L.R. 720. In each case examined by us in which it has been held that the purchase by one co-tenant of an outstanding title or encumbrance inured to the benefit of all joint owners, we find that the acts complained of took place while the relationship of tenants in common existed, or grew out of some arrangement made between the parties while they occupied that relation to each other. Here we have a period of nearly two and a half years time elapsing between the date on which the Corns lost their land to the Bank, and the purchase by Frank Corn from the Bank. It is true that time itself will not necessarily terminate the entity of co-tenancy; but certainly that relation only existed so long as the parties owned rights in common to the land. After the sale by the trustee, so far as this record shows, neither of the original co-tenants had any rights or equities in the property, either jointly or severally, insofar as their original ownership was concerned. It is true the Bank wrote letters to the representatives of Elizabeth Corn that it would sell the land back to her if she would meet certain conditions; in the mean time the Bank contracted to sell to Wm. Flemming; Elizabeth Corn then contracted with Flemming to purchase his rights under his contract with the Bank; but this deal was never consummated. We think this sufficiently established Frank Corn's plea of estoppel as against Elizabeth Corn; when she virtually abandoned her cause of action against the Bank for title and sought to procure title from Flemming, who, under his contract to purchase from the Bank, would have been its grantee, she recognized the validity of the rights held by Flemming, as being adverse to her own. This, too, is an evidence of the termination of the relationship of co-tenancy that had previously existed between her and Frank Corn. The Bank had acquired a good record title by its purchase at trustee's sale and could sell the land to any person who was willing to buy, absent a contract with another which would preclude its doing so. Frank Corn had as much right to purchase from the Bank as any stranger had, and unless he, by contract or conduct, had obligated himself to share his deal with Elizabeth Corn, he was under no legal obligation to do so. Under a somewhat complicated state of facts, this general principle is recognized in Nevill v. Hinkle, Tex.Civ. App., 276 S.W. 324, writ dismissed. At page 326 of 276 S.W. the court said: "Where a cotenant, in order to protect his interest in the property, purchases same under an execution sale, where no undue or unfair advantage is taken of his co-owners, he obtains the entire title and is not under any obligation to convey any

part thereof to his cotenants." Citing Starkweather v. Jenner, 216 U.S. 524, 30 S.Ct. 382, 384, 54 L.Ed. 602, 17 Ann.Cas. 1167, and other cases from this State and the United States Supreme Court. This excerpt is quoted from the Starkweather case, supra: "It is plain that the principle which turns a cotenant into a trustee who buys for himself a hostile outstanding title can have no proper application to a public sale of the common property, either under legal process or a power in a trust deed. In such a situation, the sale not being in any wise the result of collusion, nor subject to the control of such a bidder, he is as free, all deceit and fraud out of the way, as any one of the general public. * * *"

To the same effect are the cases of Magruder v. Johnston, Tex.Civ.App., 233 S. W. 665, writ refused, and Evans v. Carter, Tex.Civ.App., 176 S.W. 749. These are cases in which a joint owner purchased at the judicial or foreclosure sale. The case before us is far removed from such a condition as there upheld. Here, after nearly two and a half years from the date of sale under the trust deed to the Bank, and after the Bank had tried to sell to Flemming, and Elizabeth Corn tried to finance a deal to purchase under Flemming, and after she had been given every opportunity to buy from the Bank, Flemming got out of the picture and Frank Corn purchased by agreeing to pay $12,000.

Counsel for Elizabeth Corn insist that Frank Corn had made a deed to Elizabeth for his interest early in the controversy under the agreement that she was to prosecute the suit against the Bank and to reconvey to Frank Corn one-half of what she recovered. This was denied by Frank Corn, in that he claimed that his proposition was conditioned that she refinance the loan or buy from the Bank and acquire his interest in the land free of debt. The deed made by him was placed with one Estes, pending negotiations, where it remained for a year, but was never delivered and bears this notation: "This deed was not delivered as I refused to go through with the deal without more security.—Frank Corn." The trial court found against the contention of Elizabeth Corn in this respect.

There were no findings of fact and conclusions of law filed by the court. We have carefully read the two volumes of evidence and exhibits upon which the court reached his conclusions, to ascertain if there is substantial evidence in the record to support the judgment. In many instances we find the evidence conflicting, yet when no jury is demanded the trial court passes upon the weight of the evidence and the credibility of the witnesses in the same manner as a jury, when one is had. Appellate courts will not disturb the findings of fact of a trial court, even though the evidence is conflicting, if there is evidence of probative force to sustain it. 3 Tex.Jur., p. 1102, sect. 771, and the many authorities there cited.

Concerning the errors assigned, we find evidence in the record, which, if believed by the trial court, support his findings that Elizabeth Corn and Frank Corn did not finally consummate a deal between themselves, whereby the former was to prosecute the suit in her own name and would finally deed to the latter an undivided one-half of what she recovered. What has just been said likewise covers the further assignments of error which complain because the court refused to find that such contract (as alleged by Elizabeth Corn) created a fiduciary relation between the parties. (This is true because the court in effect held that no such contract was made). In view of this, it must also follow that when Frank Corn subsequently purchased the land from the Bank, no constructive trust was thereby created by which he would be obligated to account to Elizabeth Corn for an interest therein as a cotenant, and to award to her an undivided one-half interest in the land so purchased by him.

The fifth assignment, which we have quoted above, complains of the court's refusal to award to Elizabeth Corn damages for the use and rentals of the 500 acres, because it indisputably appeared that he had taken forcible possession thereof against her will and wishes. There can be no error in this, of which Elizabeth Corn can here complain, when it was established to the satisfaction of the trial court that she had no interest in the land but that the entire title belonged to Frank Corn.

The original fiduciary relationship between these parties, as it existed while they were co-tenants under the deeds from Hester A. Corn and until their equities were taken away by the trustee's sale, was terminated, insofar as those deeds

were concerned, when the sale was made and the record title passed to the Bank. That relationship would have to be again created by some subsequent agreement, contract or conduct between or by the parties. The effect of the court's judgment was to find as a fact that none of these things had happened. There is sufficient evidence in the record, if believed by the court, to support the findings. We must assume from the nature of the judgment entered that the court did believe and give preferential credence to that part of the evidence which supports his judgment, and we are not at liberty, even if inclined to do so, to substitute our own judgment and interpretation of the evidence, for that of the trial court.

No error is presented to require a reversal of the trial court's judgment, and it is accordingly affirmed.