### COLLINS v. COLLINS et al.

### No. 14251.

Court of Civil Appeals of Texas. Fort Worth.

June 20, 1941.

Rehearing Denied Sept. 26, 1941.

Smith, Young & Smith and Walker, Smith & Shannon, all of Fort Worth, for appellant.

W. L. Dean, Cantey, Hanger, McMahon, McKnight & Johnson, and J. A. Gooch, all of Fort Worth, for appellees.

BROWN, Justice.

On October 26, 1925, one R. W. Smith and his wife executed an oil and gas lease on six sections of land in Ector County, Texas, to one H. T. Wolfe; one such section being No. 13, Block 43, Township 1 South, containing 640 acres. The six sections described in the lease embrace 3,866 acres.

We find these provisions in the lease: "This lease shall remain in force for a term of ten years from this date and as long thereafter as oil or gas, or either of them are produced from said land by the lessee." It provided that if no well be commenced on the land before the 26th day of October, 1926, "this lease shall terminate as to both parties" unless the lessee pay or tender to the lessor or the depository named the sum of $966.00, "which shall operate as a rental and cover the privilege of deferring the commencement of a well for 12 months from said date. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively."

The further provision appears: "Should the first well drilled on the above described

land be a dry hole, then and in that event if a second well is not commenced on said land within 12 months from the expiration of the last rental period for which rental has been paid, this lease shall terminate as to both parties, unless the lessee on or before the expiration of said twelve months shall resume the payment of rentals in the same amount and in the same manner as hereinbefore provided."

The right to assign the lease in whole or in part is expressly given, and this provision follows: " * * * and it is hereby agreed that in the event this lease shall be assigned as to a part or as to parts of the above described lands and the assignee or assignees of such part or parts shall fail, or make default in the payment of the proportionate part of the rents due from him or them, such default shall not operate to defeat or affect this lease insofar as it covers a part or parts of said lands upon which the said lessee or any assignee thereof shall make due payment of said rental."

It will be observed that there is no express provision for drilling off-set wells, and no provision concerning what is to be done, in the event the first well is a producer, with respect to drilling the other portions of the six sections leased.

On August 5, 1926, Lessee Wolfe assigned such lease to appellee C. O. Collins, insofar as it covers the Southeast Quarter of said Section 13; same being 160 acres.

Appellant Hattie M. Collins and appellee C. O. Collins were husband and wife for almost twenty years when a decree of divorcement was obtained by Mrs. Collins in December, 1931. The decree specifically states that the property rights are not attempted to be divided and that such issue is left open for further adjudication.

Among the community assets is the assignment of the Wolfe oil and gas lease on the 160 acres above mentioned.

On March 31, 1932, Mrs. Collins, being then divorced from C. O. Collins, and being a feme sole, executed a power of attorney to Mr. Collins, giving him full power to dispose of the community estate. The instrument recites that it is not subject to revocation until all the community properties have been disposed of.

It appears from the record that Mrs. Collins executed this power of attorney voluntarily; that is, that Collins had no part in persuading her to enter into such agreement.

On February 9, 1933, C. O. Collins executed an assignment covering the South one-half of the above mentioned 160 acres to Atlantic Oil Producing Co., the consideration is the payment of $2,000 in cash and an oil and gas payment of $2,000, "only if, as and when said oil or gas is produced and that there shall be no drilling obligation on the part of the Atlantic Oil Producing Co., other than ordinary off-sets, in order to secure this oil or gas payment."

On June 12, 1935, Mr. and Mrs. Collins executed a settlement and partition agreement purporting to cover the properties jointly owned by them and it specifically recites the $2,000 oil payment reserved as a part of the consideration for the assignment of the lease on the South 80 acres, above mentioned, to Atlantic Oil Producing Co., as being one of the many interests that are owned jointly by the said parties. This partition agreement recites that the power of attorney given by Mrs. Collins to Mr. Collins in March, 1932, is "revoked and annulled by agreement of said parties".

On June 11, 1935, Mr. and Mrs. Collins executed the following agreement:

"Whereas, under even date herewith C. O. Collins and Hattie M. Collins, formerly husband and wife, have partitioned between them certain royalty and other interests heretofore jointly owned by them:

"Now, therefore, it is agreed as part of said transaction that said C. O. Collins waives any and all claims against said Hattie M. Collins on the score of expenses heretofore paid, or indebtedness heretofore claimed for services rendered, and the said Hattie M. Collins for the same consideration waives any and all other claims which she might have or hold against the said C. O. Collins on whatever score, except as follows:

"It is understood that as a basis for such settlement and the present agreement the said C. O. Collins has at his own expense procured from Messrs. McCammon, Morris & Pickens, accountants and auditors of Fort Worth, Texas, a report of the handling by the said C. O. Collins of such joint estate, and in the event it shall develop that any properties belonging to the joint estate have been inadvertently omitted such properties shall be partitioned on the same basis in the future."

On August 13, 1935, Atlantic Oil Producing Co., owner of the assigned lease covering the South 80 acres of said Section 13, wrote C. O. Collins as follows:

"Our records indicate that you and Mrs. Collins are the owners of an oil payment to be paid if, as and when produced from leases which we own covering the * * * and S/2 of SE/4 of Section 13, Block 43, Township 1 South, Ector County, Texas.

"Both of these leases expire on October 26th, of this year and this is to advise you that if you desire us to assign these leases to you in order that you may drill them, we will be glad to do so."

A copy of this letter was sent out and was received by Mrs. Collins as well as by her attorney.

On August 27, 1935, said assignee again wrote C. O. Collins and withdrew the offer to reassign the lease on a tract not in controversy here, saying:

"We are favorably considering this contribution (meaning the offer of third parties to assist in drilling the land covered by the lease not in controversy) and therefore withdraw our offer to you covering this tract, inasmuch as you have not as yet indicated any desire to accept it.

"Up to the present time there is no change on the tract in Section 13, Block 43, Township 1 South."

A copy of this letter was sent to and received by Mrs. Collins and her attorney.

On October 7, 1935, said Atlantic Oil Producing Co. executed an assignment of said lease covering the south half, or 80 acres, of the above mentioned lease to C. O. Collins.

On July 28, 1939, C. O. Collins obtained from R. W. Smith and wife and some sixteen other grantors, including Magnolia Petroleum Company and Sinclair Prairie Oil Company, a new lease covering the said North one-half, or 80 acres, of the lands heretofore described.

The lease is for a term of five years and a part of the consideration is the obligation to begin actual drilling on or before October 1, 1939, and in the event the first well is a dry hole, a second well must be commenced within 12 months from the date of the completion of the first well, or the rentals provided for must be paid. These provisions apply to the west half of the land.

The lease next calls for the drilling of an oil well on the east half on or before April 1, 1940, and contains similar provisions as to the first well being a dry hole, the obligation to drill a second well within 12 months, or the payment of rentals specified.

On July 28, 1939, C. O. Collins assigned the said lease to Tide Water Associated Oil Company for a valuable consideration, including certain oil payments.

Mrs. Collins brings the suit before us asking that a trust be impressed upon the two above described leases, on the theory that the dealings had between Mrs. Collins and her former husband show a fiduciary relationship that has existed at all times, and upon which she has the right to rely and did rely.

The theory presented as to the North 80 acres is that Collins owned the old and prior lease and that this was community property owned jointly by her and Collins and that he used the existence and ownership of such prior lease to obtain the new lease, and in the alternative, that, if the new lease was not obtained by reason of the fact that Collins then held the old, prior lease on the lands, then Collins used the fact that he had reacquired the lease on the south 80 acres from Atlantic Producing Co. to obtain the new lease on the North 80 acres, and that when Collins took the reassignment of the south 80 acres, he did so under the facts, in trust for her as well as for himself.

We have pointed out above that Collins and his wife had a settlement agreement and partitioned the properties owned by them jointly, and each released the other from all claims and obligations; the instrument reciting: "and the said Hattie M. Collins for the same consideration waives any and all other claims which she might have or hold against the said C. O. Collins on whatever score, except as follows:" Then follows the statement that, as a basis for the settlement and the agreement they have made, Collins has, at his expense, procured from a named firm of auditors and accountants "a report of the handling by the said C. O. Collins of such joint estate, *and in the event it shall develop that any properties have been inadvertently omitted such properties shall be partitioned on the same basis in the future."* (Italics ours).

No copy of the report so made by the auditors and specifically referred to was introduced in evidence, and no proof attempted to be made, of what such report

contained, and no proof was made that anything was omitted from such report inadvertently that is the subject of this suit. In fact, there is no allegation found in the plaintiff's pleading which would or could authorize the admission of any such evidence on the theory that there has been an inadvertent omission of some property in the settlement made.

It will be observed that there is no reference of any kind as to the lease on the north 80 acres, in the settlement made by the parties, and the only reference to the south 80 acres is to the oil and gas payment of $2,000, which is declared to be the joint property of the parties, each owning an undivided one-half interest therein.

Mr. Collins makes no claim here that Mrs. Collins does not own and is not entitled to her proportionate part of this oil payment if, as and when it becomes payable.

As we view the plaintiff's pleadings, she makes no contention that Collins had no right to acquire the new lease on the said north 80 acres and she does not contend here that she is an owner of an undivided one-half interest in the land by reason of the existence and validity of the original lease. She seems by her pleadings to admit that the new lease and all rights acquired thereunder by Collins are perfectly valid, but contends that these rights so acquired should be impressed with a trust for her benefit. We do not believe that this record justifies any such conclusion on her part.

Without more than the new lease, we gather from its face that a number of persons were making some claims and asserting some rights to the lands, called the north 80 acres, and that these claims and demands were adjusted by means of the new lease; one that contains new and different obligations from those embodied in the old lease.

In her petition Mrs. Collins brings suit only against Mr. Collins, R. W. Smith and Tidewater Associated Oil Company, Collins' assignee.

The record discloses that, from the inception of the suit for a divorce, Mrs. Collins has had the benefit of and procured the advice, counsel and services of attorneys of her choice to assist and protect her in all of her dealings with Collins.

She testified that as early as the year 1934 she revoked the power of attorney she had given Collins and filed the revocation in every county in Texas where there was situated community property belonging to her and Collins.

She testified that she executed the revocation for the purpose of preventing Collins from dealing with any of the community estate without her knowledge of the facts and so that she would know what was going on—in short, to protect her interests.

When she received copies of the letters from Atlantic Oil Producing Co., she testified that she threw them in the waste basket; that she did not answer them, and paid no attention to them.

She testified that she was not interested in drilling the lease; that she was not able to drill it and was not interested; that as long as Atlantic Oil Producing Co. thought it was worthless and did not want to keep it, she was not interested in putting up money to drill it.

The cause was tried to a jury and when the taking of evidence was ended, the trial court gave a peremptory instruction for the defendants, and the appeal follows.

The evidence stands undisputed that the lease on the north 80 acres was assigned by Collins two years before the divorce decree was obtained by Mrs. Collins and that this fact accounts for the north 80 acres not even being mentioned in the settlement agreement.

There is no testimony tending to show that the ownership of the lease on the south 80 acres played any part in the acquisition of the new lease on the north 80 acres, or that the ownership of the old lease on the north 80 acres, insofar as Collins' rights thereunder are concerned, played any part in the acquisition of the new lease on the said north 80 acres.

If we are able to understand the testimony of R. W. Smith by reading it in connection with that of Mrs. Collins, and Mr. Collins, it amounts to this: That Collins sold the lease on the north 80 acres to Moody Oil Company, but this assignee suffered financial reverses and it gave Smith either a release or reassigned the lease to him. (Smith calls it a "deed" and he recorded it in Ector County.) That Moody Oil Company did not record its assignment from Collins, and that this fact "put a cloud" on his title, as he expressed it; that he wanted this tract drilled and he was

willing to "give it away" (meaning a lease) in order to get action.

It thus appears that Collins had no interest of any kind in the north 80 acres when he secured the new lease on same from Smith and a large number of other grantors who were evidently claiming some interest in the land.

We know of no legal principle that would prevent Collins from obtaining a new lease on the premises, which would be free from any rights asserted by Mrs. Collins.

The following authorities seem to support the view that this court and the trial court take in the disposition of the case: Collins et al. v. Gee, Tex.Civ.App., 107 S.W.2d 754, writ refused; Green et al. v. Hall et al., Tex.Com.App., 228 S.W. 183 opinion adopted by Supreme Court; Corn v. First Texas Joint Stock Land Bank of Houston et al., Tex.Civ.App., 131 S.W.2d 752, writ refused; Evans v. Carter, Tex. Civ.App., 176 S.W. 749.

Mrs. Collins having no interest in the north 80 acres when Collins obtained the new lease, it cannot be said that Collins owed her any duty to "look after her interest" in the land, and the evidence adduced in this case does not meet the requirements laid down in such cases as Hamilton v. Scott, Tex.Civ.App., 110 S.W. 2d 925, Russell v. Sharp, 192 Mo. 270, 91 S.W. 134, 111 Am.St.Rep. 496, Ambruster v. Ambruster, 326 Mo. 51, 31 S.W.2d 28, 77 A.L.R. 782, Norton v. Norton, Mo.Sup., 43 S.W.2d 1024, and Jones et al. v. Siler et al., 129 Tex. 13, 100 S.W.2d 352, opinion adopted by Supreme Court, and cases cited. The rule being that the evidence must be "clear, satisfactory and convincing."

What we have said concerning the north 80 acres applies equally as well to the south 80 acres.

Mrs. Collins had no interest in the latter tract excepting her oil payment of $1,000. This she still owns and the ownership is recognized by Collins.

If Collins had taken the reassignment of the lease in consideration of the cancellation of the oil payment, we would have a different situation, but he took the reassigned lease burdened with the oil payment in favor of Mrs. Collins.

She not only showed no interest in obtaining the reassignment, but she considered the lease worthless and declared that she was not interested in it.

All of her title to the lease had been disposed of and she had nothing left except the one-half of the $2,000 oil payment if, as and when oil, or gas, was produced from it.

To hold that the title obtained by Collins, under the facts in this record, gives rise to a constructive trust in favor of Mrs. Collins would, in our opinion, necessitate a strained construction of the rules governing constructive trusts.

All assignments of error are overruled and the judgment is affirmed.