**Henry TOUNGATE, Appellant,**

v.

**L. C. TOUNGATE et ux., Appellees.***

**No. 12324.**

Court of Civil Appeals of Texas, Austin.

Nov. 5, 1975.

Rehearing Denied Dec. 3, 1975.

Harold L. Coit, Austin, for appellant.

James Max Moudy, Georgetown, for appellees.

SHANNON, Justice.

Appellant, Henry Toungate, filed suit in the district court of Williamson County against his uncle and aunt, Lum and Lorene Toungate, appellees. By his suit appellant sought, among other things, to impose a constructive trust for his benefit on a parcel of land. The land consists of a half acre out of a ten-acre tract purchased by appellees in 1946 and is located about fifteen miles southwest of Georgetown in Williamson County. Upon trial to the court, judgment was entered that appellant take nothing. The judgment declared further that the title and interest in the land was in appellees. We will affirm that judgment.

Appellant's trial pleading was his first amended original petition. In connection with his claim for the imposition of the constructive trust appellant alleged that he bought the half acre of land from his uncle and aunt in December, 1972, for the sum of eighty-five dollars. Appellant pleaded that the appellees continued to hold record title to the land though they have recognized his claim to the land and have agreed to deliver title to the land to him. Appellant averred further that because of the relationship of trust which existed between the parties, he

---

* Editor's Note: The decision in Howard v. Allright Garage, Inc., published in the advance sheets at this citation (529 S.W.2d 247) was withdrawn from the bound volume at the request of the Supreme Court after dismissing the entire appeal as moot.

did not demand delivery of title, but instead had faith that his uncle and aunt would give him a deed when requested to do so. The appellees refused to deliver title to appellant.

Appellant's position at trial and on appeal is best summarized by a line of his testimony on cross-examination, "I am saying that he [Lum] is trying to beat me out of my land." At trial appellant testified that there had always been a close relationship between him and Lum. In fact appellant ". . . thought more of him [Lum] than anybody alive, except my daddy." In December, 1952, appellant had been discharged from the United States Army. He had some cash representing his mustering-out pay. About that time Lum was "hurt financially." Appellant testified that he ". . . wanted that piece of property [the half acre] because I bought it for my mother." At that time appellant's mother and father lived on land adjacent to the half acre. Appellant recalled that, "Lum needed some money and he offered me the piece of land . . ." Appellant testified, in effect, that he accepted Lum's offer. Appellant introduced into evidence the check which he gave Lum on December 6. On that check there appears the following notation, " ½ acre of land on south side of farm road 620." With respect to any promise to make and deliver a deed to the property, appellant testified that, "Lum told me he wasn't in shape to survey it, and when he got out of a bind, he would have it surveyed and give me my deed."

In the intervening years, appellant said that he had asked Lum twice for a deed to the half acre. Lum's reply to the first request, appellant said, was that the land was under mortgage, and his reply to the second request was that Lorene would not sign such a deed. Appellant testified that he had paid the school taxes on the half acre for about four years.

Appellant called as a witness his brother, Curtis Toungate. Curtis testified that he was present at the time of the transaction between appellant and Lum. Curtis understood the transaction to be that appellant had bought the property and " . . . it was his [appellant's] property." Curtis recalled Lum saying that he would sell it to appellant because " . . . mother had property there, and it joined her property, and he [Lum] would not ever think of selling it to anybody else."

Appellant's mother, Rachel Toungate, his aunt, Julia Toungate, and his brothers, Curtis and Raymond Toungate, had heard Lum or Lorene refer to the half acre of land as appellant's land.

Lum explained the December, 1952, transaction between him and appellant in the following manner, "Henry gave me a check where I wouldn't sell that land to nobody as long as his mother and dad should live." Lum recalled that on the day of the transaction appellant, appellant's father, and he had been killing hogs or "something like that." He testified that appellant gave him the check and said that he did not want Lum to sell the half acre as long as appellant's mother and father were alive, and that he agreed not to sell the land. Lum did not recall any statement by appellant to the effect that he wanted to buy the land.

Lum testified that he had been approached by several prospective purchasers for the half acre. He has not tried to sell the land for the reason of the agreement between him and appellant that he would not sell for so long as appellant's parents were alive. He testified further that he had always paid taxes on the whole ten acres, including the half acre.

Lum and Lorene both denied that they had ever referred to the half acre as appellant's land.

The testimony was that appellant never made any use of the half acre other than to store thereon some deer blinds, barrels, and reinforcement steel.

Upon request, the court filed findings of fact and conclusions of law, and upon further request, the court filed additional findings and conclusions. The court found, among other things, that on December 6, 1952, appellant delivered his check in the sum of eighty-five dollars to Lum Toungate. The check bore the notation, " ½ acre of land on south side of farm road 620." At the time of the delivery of the check, a very close familial relationship, one of trust and confidence, existed between the parties. Appellees were in need of money in December, 1952. The sum of eighty-five dollars was at least the equivalent of the fair market value of the land.

The court found further that the evidence was conflicting as to whether appellant gave the check to Lum for the purchase of the land and title thereto, or whether, as claimed by Lum, that the check was given to Lum in consideration for his agreement to withhold selling the land for so long as appellants were alive and residing next to the property.

The court found as a fact that appellant had never continuously used or cultivated the land, nor had he made any improvements thereon, nor had he ever resided there, nor had he manifested a claim to the land prior to filing suit. The court found that the appellees have never recognized ownership of the land to be in appellant. The appellees have paid all pertinent taxes on the land since 1946, and appellant has paid school and county taxes on the land, but not continuously since December, 1952. Appellant's mother still lives next to the land in controversy.

The court concluded, among other things, that the check was signed by appellant and delivered to Lum, but that the record did not establish by a preponderance of the evidence that a purchase and sale of the land was intended or effectuated.

The threshold finding and conclusion which appellant must overturn in order to prevail on his theory of constructive trust is the finding which provides that the evidence was conflicting concerning whether appellant gave the check to Lum to purchase the land and the title thereto, or whether appellant gave the check to Lum in consideration for his agreement to withhold selling the land for so long as appellant's parents were alive and residing next to the property, and the conclusion which provides that the record did not establish by a preponderance of the evidence that a purchase and sale of the land was intended or effectuated. Appellant attacks the finding by his point of error number one which we construe to mean that the finding is so contrary to the great weight and preponderance of the evidence so as to be clearly wrong.

■■■ In a nonjury case the trial court is the judge of the credibility of the witnesses and the weight to be accorded to their testimony. *Great American Insurance Company v. Murray,*, 437 S.W.2d 264 (Tex. 1969); *Wilmans v. Hubble,* 153 S.W.2d 228 (Tex.Civ.App. 1941, writ ref'd). Where there is evidence of probative force to support the findings and the judgment of the trial court, such findings will usually not be disturbed, even though the evidence is conflicting and the reviewing court might have concluded otherwise. *Corn v. First Texas Joint Stock Land Bank,* 131 S.W.2d 752 (Tex.Civ.App.1939, writ ref'd).

■■■ We have read the statement of facts, much of which has been summarized in this opinion. We are of the opinion that the finding attacked by point of error one is supported by probative evidence. Even though we are not certain that we would have concluded in the same way as the trial court, had we been the fact finder, still we are satisfied that the finding of the trial court was not so contrary to the great weight and preponderance of the evidence so as to be clearly wrong.

The judgment is affirmed.